#076105

**ORIGINAL**

FILED

JAN 6 2014

U.S. COURT OF
FEDERAL CLAIMS

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

RUDOLPH AND SLETTEN, INC.,

        Plaintiff,

    v.

THE UNITED STATES OF
AMERICA,

        Defendant.

Case No. 14 - 14 c

**COMPLAINT PURSUANT TO 41
U.S.C. SECTION 7101, et seq.**

Plaintiff alleges:

### Jurisdiction

1.    The United States Court of Federal Claims has jurisdiction pursuant to 28 U.S.C. §1491. Plaintiff brings this action pursuant to in this matter pursuant to the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §7101 *et seq.*

### The Parties

2.    Plaintiff RUDOLPH AND SLETTEN, INC. ("R&S"), is a general contractor in the construction industry organized and existing under the laws of the State of California, with its principle place of business located at 1600 Seaport Boulevard, Suite 350, Redwood City, California 90017.

3.    Defendant THE UNITED STATES OF AMERICA is, and at all times mentioned herein was, acting by and through the Department of Commerce, which is and at all times mentioned herein was, an agency of the United States.

### The Contract

4.    On May 3, 2010, the United States, acting by and through the Department of Commerce-National Oceanic and Atmospheric Administration ("NOAA"), awarded R&S Contract #AB1330-10-CN-0114 to construct the La Jolla Laboratory in support of the Southwest Fisheries Science Center in La Jolla, California ("Contract"). A true and correct copy of the contract is attached hereto as Exhibit "A" and incorporated herein.

5.     R&S has timely and properly performed any and all obligations required to be performed under the Contract, except as excused or delayed by NOAA's failure to timely perform as more specifically set forth below.

### Factual Background for the Certified Claim

6.     NOAA has not "accepted" the Project, but has occupied the buildings since 2012, and used but not maintained the buildings. The lack of maintenance, and damage related to NOAA's occupancy has caused a large number of call backs and additional work.

7.     This action relates to; (1) delay-related costs caused by NOAA and; (2) unresolved Requests for Contract Modifications (RCMs). This action also seeks reimbursement for costs associated with hiring consultants at NOAA's request to conduct both an acoustic and vibration study and a test of the Technology Tank waterproofing as part of the contract administration.

8.     The unresolved RCMs total $909,327 and demonstrate that R&S' work was severely impacted by; (1) NOAA's failure to properly administrate the Project; (2) NOAA's latently defective design and; (3) untimely responses to Requests for Information and/or direction and issuance of modifications to correct the design defects and to implement other changes.

9.     Four delay-related impacts, incurred since June 26, 2013 are described in detail in the CDA Claim referenced and described below and total $1,691,534. The first of these delay-related impacts is for NOAA's wrongful withholding of retention and liquidated damages due to alleged unsatisfactory progress. Second, R&S incurred costs for Builders Risk Insurance after the original contract completion date. Finally, R&S continued to experience costs for extended general conditions after June 26, 2013, due to NOAA malfeasance in administering the contract.

### The Certified Claim

This action relates to a certified claim in the amount of $2,600,861, submitted pursuant to the CDA to NOAA on October 30, 2013 ("CDA Claim").  A true and

correct copy of the narrative portion of the CDA Claim, without exhibits, is attached hereto as Exhibit "B" and incorporated by reference herein. The CDA Claim requested a contracting officer's final decision within 60 days of submission of the CDA Claim.

1. NOAA acknowledged receipt of the CDA Claim on November 4, 2013. A true and correct copy of NOAA's acknowledgment of receipt of the claim is attached hereto as Exhibit "C."

## Contracting Officer's Decision

10. As described herein, NOAA acknowledged receipt of the CDA Claim on November 4, 2013. Pursuant to 41 U.S.C. section 7103(f)(2), the contracting officer had 60 days from the date of receipt to issue a decision. To date, the contracting officer has not issued a decision regarding the CDA Claim, nor has the contracting officer requested additional time to issue a decision pursuant to 41 U.S.C. section 7103.

11. Pursuant to 41 U.S.C. section 7103(5), the failure of the contracting officer to issue a decision on the CDA Claim within the required time period is deemed to be a decision by the contracting officer denying the claim and authorizes this action.

12. All other conditions precedent for the filing of this action have been satisfied, waived and/or excused.

## Count 1

13. The allegations contained in paragraphs 1 through 12 above are incorporated by reference as though fully set forth herein.

14. Pursuant to the terms of the Contract, R&S is entitled to an equitable adjustment in the amount of $2,600,861 for the additional cost related to delay-related costs caused by NOAA and unresolved Requests for Contract Modifications.

15. As such, NOAA is liable to R&S for $2,600,861 plus interest thereon as allowed by the Contracts Disputes Act.

**WHEREFORE**, Plaintiff, Rudolph and Sletten, Inc., demands judgment against Defendant, The United States of America, for an award of damages in the amount of $2,600,861, plus interest as required under the Contracts Disputes Act, plus such other

and further relief as this Court deems just and proper. Plaintiff, Rudolph and Sletten,
Inc., also demands attorneys' fees and costs allowed by statute.

DATED: January 6, 2014        Respectfully submitted,


By: _Nomi L. Castle_ by MKS

    Nomi L. Castle
    Marian K. Selvaggio
    **CASTLE & ASSOCIATES**
    **A Professional Law Corporation**
    8383 Wilshire Boulevard, Ste. 810
    Beverly Hills, CA 90211
    (310) 286-3400 (Telephone)
    (310) 286-3404 (Facsimile)
    ncastle@castlelawoffice.com
    mselvaggio@castlelawoffice.com

    Counsel for Plaintiff
    Rudolph and Sletten, Inc.

# Exhibit A



UNITED STATES DEPARTMENT OF COMMERCE
**National Oceanic and Atmospheric Administration**
Western Region Acquisition Division
7600 Sand Point Way NE
Seattle, WA  98115-6349

May 03, 2010

Mr. Rene Olivo, Vice President of Operations
Rudolph and Sletten, Inc.
10955 Vista Sorrento Parkway, Suite 100
San Diego, CA   92130

Dear Mr. Olivo:

Subject:      SOLICITATION NO. AB1330-10-RP-0005
              RECOVERY—Construction of NOAA's La Jolla Laboratory
              Replacement Project -- La Jolla, California
              **CONTRACT AWARD**

Your firm has been awarded Contract #AB1330-10-CN-0114 to construct the La Jolla
Laboratory in support of the Southwest Fisheries Science Center in La Jolla,
California.  The contract award includes acceptance of all line items of Schedule
B for the amount of $55,546,000.00 (Line Items: Base Item 0001, Optional Items
0002 through 0006).  Enclosed is your copy of the contract for this work.  Please
note that the contract number listed above must be referenced on all future
correspondence.

The following items are to be submitted to this office within the timeframes
stated:

1.    Performance and Payment Bonds within seven (7) calendar days of this award
as required by Block 12B of SF-1442, Solicitation, Offer, and Award.  The penal
sum of your Performance Bond shall be 100% of the contract amount and the penal
sum of the Payment Bond shall be 100% of the contract award amount.

2.    Under FAR 52.222-11, Subcontracts (Labor Standards), Paragraph (b)(1),
submission of a completed Statement and Acknowledgment Form (SF-1413), for each
subcontract within fourteen (14) calendar days of this award is required.  An
SF-1413 form can be located on the GSA Forms Library at http://www.arnet.gov/far.


3.    A copy of your insurance certificate as required by FAR Clause 52.228-5 of
your contract, within five (5) calendar days after award.

Please note that Optional Item 0006, to furnish and install the Enhanced
furniture, Fixtures, and Equipment (FF&E), while awarded under the contract,
requires that a separate notice to proceed authorizing the contractor to commence
work under this line item will be issued to the contractor.  No work effort should
be commenced under this item until receipt of a Notice to Proceed.  The contractor
shall prepare and submit to the COTR a schedule giving desired dates of ordering
of FF&E items to meet the contract delivery and completion schedule.  The
schedule/plan shall be available for review during the post award/pre-construction
meeting and will be subject to the approval of the COTR.

Please take the time to review the Department of Labor (DOL) Wage Determination
included in your contract.  All classification of laborers intended for use by the

contractor **must** be posted  If a classification is not pro   led by the wage
determination provided, it is your responsibility to forward all (prime &
subcontractor) requests to the Western Acquisition Division office for approval by
DOL.  Without proper classifications, you risk having payrolls and possibly
payment requests, rejected until corrective action is taken.

A Notice to Proceed for project, with the exception of work associated with
Optional Line Item 0006, will be issued upon receipt, review, and acceptance of
the bonds, subcontractor statements, and insurance certificates by the Government.
No construction effort should be commenced until you have received the Notice to
Proceed.

In accordance with clause 1352.242-71, Post Award Conference, you will be notified
within 15 calendars after the date of contract award to coordinate and confirm a
specific date, time, and location of this conference.

If you have any questions regarding this contract, please contact Judi Jzyk at
206/526-6039 or judi.m.jzyk@noaa.gov.

Sincerely,

Susan K. Sherrell
Contracting Officer

Enclosure

cc:
M. Eberling, NOAA-COTR

2

| SOLICITATION, OFFER, AND AWARD<br>*(Construction, Alteration, or Repair)* | 1. Solicitation No.<br>AB1330-10-RP-0005 | 2. Type of Solicitation<br>☐ Sealed Bid (IFB)<br>☒ Negotiated (RFP) | 3. Date Issued<br>**11/23/09** | Page of Pages<br>1   of   79 |
|---|---|---|---|---|

IMPORTANT – The "offer" section on the reverse must be fully completed by offeror.        13-1454

| 4. Contract No.<br>**AB1330-10-CN-0114** | 5. Requisition/Purchase Request No.<br>NAAJ5732-10-00257 | 6. Project No.<br>FSC: Y111 NAICS: 236220 |
|---|---|---|

| 7. Issued By    Code AJ630031<br><br>WESTERN ACQUISITION DIVISION<br>7600 SAND POINT WAY NE<br>SEATTLE, WA 98115-6349 | 8. Address Offer to    Code AJ630031<br><br>SAME AS BLOCK 7 |
|---|---|

| 9. For Information Call: | A. Name<br>JUDI M. JZYK   (ID JJ1) | B. Telephone No. *(Include area code) (No Collect Calls)*<br>206-526-6039<br>JUDI.M.JZYK@NOAA.GOV |
|---|---|---|

| SOLICITATION |
|---|

NOTE: In sealed bid solicitation "offer" and "offeror" mean "bid" and "bidder"

10. THE GOVERNMENT REQUIRES PERFORMANCE OF THE WORK DESCRIBED IN THESE DOCUMENTS: *(Title, Identifying No., Date)*

**RECOVERY—CONSTRUCTION OF NOAA'S LA JOLLA LABORATORY REPLACEMENT PROJECT**
**LA JOLLA, CALIFORNIA**

11. The Contractor shall begin performance within <u>7</u> calendar days and complete it within <u>548</u> calendar days after receiving the
☐ award, ☒ notice to proceed. This performance period is ☒ mandatory ☐ negotiable. *( See Section F, FAR 52.211-10.)*

| 12A. The Contractor must furnish any required performance and payment bonds?<br>*(If "YES", indicate within how many calendar days after award in item 12B.)*<br>☒ Yes ☐ No | 12B. Calendar Days<br><br>Seven (7) |
|---|---|

13. Additional Solicitation Requirements:

A. Sealed offers in original and 3 copies to perform the work required are due at the place specified in Item 8 by **2:00 PM** local time
    **JANUARY 14, 2010.** If this is a sealed bid solicitation, offers must be publicly opened at that time. Sealed envelopes containing offers shall be marked
    to show the offeror's name and address, the solicitation number, and the date and time offers are due.

B. An offer guarantee ☒ is ☐ is not required.

C. All offers are subject to the (1) work requirements, and (2) other provisions and clauses incorporated in the solicitation in full text or by reference.

D. Offers providing less than <u>90</u> calendar days for Government acceptance after the date offers are due will not be considered and will be rejected.

| NSN 7540-01-155-3212 | 1442-101 | Standard Form 1442 (REV. 4-85)<br>Prescribed by GSA FAR (48 CFR) 53.236-1 (e) |
|---|---|---|

| OFFER (Must be fully completed by offeror) | |
|---|---|
| 14. Name and Address of Offeror  (Include ZIP Code) | 15. Telephone No. (Include are code) |
| | 15. Remittance Address (Include on it different than Item 14) |
| Code          Facility Code | |

17. The offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this is accepted by the Government in writing within _____ calendar days after the date offers are due.  (Insert any number equal to or greater than the minimum requirement stated in Item 13D.  Failure to insert any number means the offeror accepts the minimum.

| AMOUNTS | ENTER AMOUNTS FOR SCHEDULE ITEMS, SECTION B – SUPPLIES OR SERVICES AND SCHEDULE PRICES/COSTS ON PAGE 3. |
|---|---|

18. The offeror agrees to furnish any required performance and payment bonds.

### 19. ACKNOWLEDGEMENT OF AMENDMENTS
(The offeror acknowledges receipt of amendment to the solicitation - give number and data  of each)

| AMENDMENT No. | | | | | | |
|---|---|---|---|---|---|---|
| DATE | | | | | | |

| 20A NAME,TITLE OF PERSON AUTHORIZED TO SIGN OFFER (Type or Print) | 20B. SIGNATURE | 20c. OFFER DATE |
|---|---|---|

### AWARD (to be completed by Government)

**21. ITEM(S) ACCEPTED**
Items accepted for award are: Base Item-$50,581,000; Optional Items 0002-$1,570,000; 0003-$1,165,000; 0004-$341,000; 0005-$1,080,000; and 0006-$809,000 for a total of $55,546,000

| 22. Amount $55,546,000.00 | 23. Accounting and Appropriation Data 1410Z2LFLJRP0000380607010160657000103000000252700000000000 | |
|---|---|---|
| 24. Submit Invoices to Address shown above (4 copies unless otherwise specified) See Section G | Item | 25. Other Than full and open competition pursuant to |
| | | ☐ 10 U.S.C. 2304(c) (    )      ☐ 41 U.S.C 253 (c) (    ) |

| 26. Administered by | Payment  will be made by |
|---|---|
| WESTERN ACQUISITION DIVISION 7600 SAND POINT WAY NE SEATTLE, WA 98115-6349 | SAME AS BLOCK 26 |

### CONTRACTING OFFICER WILL COMPLETE ITEM 28 OR 29 AS APPLICABLE

| ☐ 28. NEGOTIATED AGREEMENT (Contractor is required to sign this document and return _____ copies to issuing office) Contractor agrees to furnish and deliver all items or perform all work, requisition stated in this contract. The rights and obligation s of the parties to this contract shall be governed by (a) this contract award, (b) the solicitation, and(c) the clauses, representations certifications, and specifications incorporated by reference in or attached to this contract. | [X] 29. AWARD (Contractor is not required to sign this document.) Your offer on this solicitation, is hereby accepted as to the items listed.  This award consummates the contract, which consists of (a) the Government solicitation and your offer, and  (b)  this contract award. No further contractual document is necessary. |
|---|---|
| 30A.  Name and Title of Contractor or Person authorized | 31A.  Name of Contracting Officer (Type or Print) *Susan V Sherrell* |
| 30b.  Signature          30C.  Date | 31B.  United States of America         31C.  Award Date By *Susan Sherrell*           3 May 2010 |

STANDARD FORM 1442 BACK (REV. 4-85)

| OFFER *(Must be fully completed by offeror)* | |
|---|---|
| 14. NAME AND ADDRESS OF OFFEROR *(Include ZIP Code)*<br>Rudolph and Sletten, Inc.<br>10955 Vista Sorrento Parkway<br>Suite 100<br>Diego, CA 92130 | 15. TELEPHONE NO. *(Include a.. . code)*<br>858-259-6262 |
| | 16. REMITTANCE ADDRESS *(Include only if different than Item 14)*<br>P.O. Box 5067     1600 SeaPort Blvd #350<br>Redwood City, CA 94063    Redwood, CA 94063-5575 |

| CODE | FACILITY CODE |
|---|---|

17. The offeror agrees to perform the work required at the prices specified below in strict accordance with the terms of this solicitation, if this offer is accepted by the Government in writing within _____ calendar days after the date _____ offers are due. *(Insert any number equal to or greater than the minimum requirement stated in Item 13D. Failure to insert any number means the offeror accepts the minimum in Item 13D.)*

**AMOUNTS** ▶ ENTER AMOUNTS FOR SCHEDULE ITEMS, SECTION B - SUPPLIES OR SERVICES AND SCHEDULE PRICES/COSTS ON PAGE 3.

18. The offeror agrees to furnish any required performance and payment bonds.

### 19. ACKNOWLEDGMENT OF AMENDMENTS
*(The offeror acknowledges receipt of amendments to the solicitation - give number and date of each)*

| AMENDMENT NO. | 01 | 02 | 03 | 04 | 05 | | | |
|---|---|---|---|---|---|---|---|---|
| DATE | December 8, 2009 | December 14, 2009 | December 22, 2009 | December 30, 2009 | January 5, 2010 | | | |

| 20A. NAME AND TITLE OF PERSON AUTHORIZED TO SIGN OFFER *(Type or print)*<br>Rene Olivo, Vice President of Operations | 20B. SIGNATURE<br>*Rene Olivo* | 20C. OFFER DATE<br>January 14, 2010 |
|---|---|---|

### AWARD *(To be completed by Government)*

EMS ACCEPTED:

| 22. AMOUNT | 23. ACCOUNTING AND APPROPRIATION DATA | |
|---|---|---|
| 24. SUBIT INVOICES TO ADDRESS SHOWN IN *(4 copies unless otherwise specified)* ▶ | ITEM | 25. OTHER THAN FULL AND OPEN COMPETITION PURSUANT TO<br>☐ 10 U.S.C. 2304(c) ( )    ☐ 41 U.S.C. 253(c) ( ) |
| 26. ADMINISTERED BY    CODE<br>WESTERN AQUISITION DIVISION<br>7600 SAND POINT WAY NE<br>SEATTLE, WA 98115-6349 | | 27. PAYMENT WILL BE MADE BY<br>SAME AS BLOCK 26 |

### CONTRACTING OFFICER WILL COMPLETE ITEM 28 OR 29 AS APPLICABLE

| ☒ 28. NEGOTIATED AGREEMENT *(Contractor is required to sign this document and return _____ 5 _____ copies to issuing office.)* Contractor agrees to furnish and deliver all items or perform all work requirements identified on this form and any continuation sheets for the consideration stated in this contract. The rights and obligations of the parties to this contract shall be governed by (a) this contract award, (b) the solicitation, and (c) the clauses, representations, certifications and specifications incorporated by reference in or attached to this contract. | ☐ 29. AWARD *(Contractor is not required to sign this document.)* Your offer on this solicitation is hereby accepted as to the items listed. This award consummates the contract, which consists of (a) the Government solicitation and your offer, and (b) this contract award. No further contractual document is necessary. |
|---|---|
| ____ NAME AND TITLE OF CONTRACTOR OR PERSON AUTHORIZED TO SIGN *(Type or print)*<br>Rene Olivo, Vice President of Operations | 31A. NAME OF CONTRACTING OFFICER *(Type or print)* |
| 30B. SIGNATURE<br>*Rene Olivo*    30C. DATE<br>January 14, 2010 | 31B. UNITED STATES OF AMERICA    31C. AWARD DATE<br>BY |

STANDARD FORM1442 BACK (REV. 4-85)

**Supplies or Services and Prices/Costs**

| Item No. | Supplies/Services | Quantity | Unit | Unit Price | Amount |
|---|---|---|---|---|---|
| | **SCHEDULE** | | | | |
| 0001 | **BASE ITEM**<br>The Contractor shall furnish the necessary personnel, material, equipment, services and facilities (except as otherwise specified) to complete construction of the NOAA La Jolla Laboratory Replacement Facility in accordance with the contract documents, specifications, and drawings **EXCLUDING OPTIONAL ITEMS 0002, 0003, 0004, 0005, & 0006** noted below. | 1 | LS | | $50,581,000 |
| | **OPTIONAL ITEM(S)** | | | | |
| 0002 | The Contractor shall furnish the necessary personnel, material, equipment, services and facilities (except as otherwise specified) to install Acoustic Tank Life Support Systems in accordance with the project plans and specifications (Optional Bid #1). | 1 | LS | | $1,570,000 |
| 0003 | The Contractor shall furnish the necessary personnel, material, equipment, services and facilities (except as otherwise specified) to install Acoustic Tank Mechanical/Plumbing/Electrical Systems in accordance with the project plans and specifications (Optional Bid #2). | 1 | LS | | $1,165,000 |
| 0004 | The Contractor shall furnish the necessary personnel, material, equipment, services and facilities (except as otherwise specified) to install Acoustic Tank Equipment in accordance with the project plans and specifications (Optional Bid #3). | 1 | LS | | $341,000 |
| 0005 | The Contractor shall furnish the necessary personnel, material, equipment, services and facilities (except as otherwise specified) to install Renewable Energy Investment: Photo Voltaic Cell Array--Roof in accordance with the project plans and specifications (Optional Bid #4). | 1 | LS | | $1,080,000 |
| 0006 | The Contractor shall furnish the necessary personnel, material, equipment, services and facilities (except as otherwise specified) to install the Enhanced Furniture, Fixtures, and Equipment (FF&E) in accordance with the project plans andspecifications (Optional Bid #5). | 1 | LS | | $809,000 |
| | TOTAL OF ALL ITEMS (0001-0006) | | | | $55,546,000 |

LS = Lump Sum

**PLEASE NOTE:** Offerors must submit pricing for each line item in the above Schedule. Failure to offer in this manner may result in the proposal being rejected without further consideration.

**REVISED 12/18/09**

AB1330-10-RP-0005                    Page - 3

## FAR 52.252-4 -- Alterations in Contract

In accordance with FAR 52.252-4 -- Alterations in Contract (Apr 1984), Portions of this contract are altered as follows:

1. Awarded items are Base Item 0001, Optional Items 0002, 0003, 0004, 0005, and 0006. Please note that Optional Item 0006, to install the Enhanced furniture, Fixtures, and Equipment (FF&E), while awarded, will be issued a separate notice to proceed authorizing the contractor to commence work under this line item. The contractor shall prepare and submit to the COTR a schedule giving desired dates of ordering of FF&E items to meet the contract delivery and completion schedule. The schedule/plan shall be available for review during the post award/pre-construction meeting and will be subject to the approval of the COTR.

2. Amendments 0001 through 0007 are incorporated into the contract in full force and effect as acknowledged by the contractor.

3. Provision H.8, Key Personnel: The following persons are assigned as key personnel:
   Project Manger - Mike Samudio
   Quality Control Manager - Bruce Leidle
   On-Site Superintendent - Bruce Craig

4. The subcontracting plan noted in Provision H.46 below, is hereby incorporated into and made a material part of the contract.

**H.46    SUBCONTRACTING PLAN APPROVAL**

   The subcontracting Plan submitted by Rudolph and Sletten, Inc. dated March 24, 2010, has been approved by the Government and is incorporated herein and made part of this contract. Any modifications to this contract or modifications in excess of $550,000 will require modification of the Subcontracting Plan.

5. DOL Wage Determination #CA100001 CA1 dated 03/19/2010, Revision 1, is incorporated into the final contract documents.

6. FAR clause 52.225-23, Required Use Of American Iron, Steel, And Other Manufactured Goods--Buy American Act--Construction Materials Under Trade Agreements (Aug 2009), has been added to Section I, Contract Clauses as item, I. 106.

-- END OF ALTERATIONS --

3A

OMB CONTROL NO. 0690-0008

## AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| 1. TRACT ID CODE | | PAGE OF PAGES |
|---|---|---|
| | | 1 / 5 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| AMENDMENT #SIX (6) | 02/26/10 | NAAJ6732-10-00257 | |

| 6. ISSUED BY | CODE N/A | 7. ADMINISTERED BY (If other than Item 6) | CODE N/A |
|---|---|---|---|
| NOAA, WESTERN ACQUISITION DIVISION 7600 SAND POINT WAY, NE SEATTLE, WA  98115-6349 | | SAME AS BLOCK 6 | |

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

(✗) 9A. AMENDMENT OF SOLICITATION NO.
AB1330-10-RP-0005

9B. DATED (SEE ITEM 11)
11/23/09

10A. MODIFICATION OF CONTRACT/ORDER NO.

10B. DATED (SEE ITEM 13)

CODE  N/A      FACILITY CODE  N/A

### 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[X] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers □ is extended, [✓] is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:

(a) By completing Items 8 and 15, and returning  1  copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted;  or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER.  If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

N/A

### 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

(✗) A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b).

C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor □ is not, □ is required to sign this document and return __ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

### RECOVERY—CONSTRUCTION OF NOAA'S LA JOLLA LABORATORY REPLACEMENT PROJECT LA JOLLA, CALIFORNIA

A. Reference Section J.1, Attachment J.1.3, Department of Labor Wage Decision:
**DELETE** Wage Decision CA080001 CA1 dated 01/01/10, Revision 39, consisting of 26 pages, in its entirety and;
**REPLACE WITH** attached Wage Decision #CA080001 CA1 dated 02/12/10, Revision 41, consisting of 26 pages.

Except  as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) |
|---|---|
| Rene Olivo, Vice President, Operations | xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx |

| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
|---|---|---|---|
| BY _(signature)_ (Signature of person authorized to sign) | 03/08/2010 | BY xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx (Signature of Contracting Officer) | xxxxxxxxxxxx |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

30-105

STANDARD FORM 30 (REV 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

OMB CONTROL NO. 0690-0008

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1 CONTRACT IO CODE | PAGE OF PAGES 1  1 |
|---|---|---|---|

| 2. AMENDMENT/MODIFICATION NO. AMENDMENT #SEVEN (7) | 3. EFFECTIVE DATE 03/22/10 | 4. REQUISITION/PURCHASE REQ. NO. NAAJ5732-10-00257 | 5 PROJECT NO (if applicable) |
|---|---|---|---|

| 6. ISSUED BY | CODE N/A | 7. ADMINISTERED BY (if other than Item 6) | CODE N/A |
|---|---|---|---|

NOAA, WESTERN ACQUISITION DIVISION
7600 SAND POINT WAY, NE
SEATTLE, WA  98115-6349

SAME AS BLOCK 6

8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code)

(Y)  9A. AMENDMENT OF SOLICITATION NO.
X    AB1330-10-RP-0005
9B. DATED (SEE ITEM 11)   11/23/09
10A. MODIFICATION OF CONTRACT/ORDER NO.
10B. DATED (SEE ITEM 13)

CODE N/A    FACILITY CODE N/A

## 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[X] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers  [ ] is extended,  [√] is not extended.

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods:
(a) By completing Items 8 and 15, and returning _1_ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
N/A

## 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (Y) | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
|---|---|
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D. OTHER (Specify type of modification and authority) |

E. IMPORTANT: Contractor  [ ] is not,  [ ] is required to sign this document and return ___ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

RECOVERY—CONSTRUCTION OF NOAA'S LA JOLLA LABORATORY REPLACEMENT PROJECT
LA JOLLA, CALIFORNIA

A. Reference Section J.1, Attachment J.1.3, Department of Labor Wage Decision:
DELETE, Wage Decision #CA080001 CA1 dated 02/12/10, Revision 41, consisting of 26 pages, in its entirety and;
REPLACE WITH attached Wage Decision #CA100001 CA1 dated 03/19/2010, Revision 1, consisting of 25 pages.

-- END OF AMENDMENT --

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) Rene Olivo, Vice President, Operations | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX |
|---|---|
| 15B. CONTRACTOR/OFFEROR BY (Signature of person authorized to sign) | 15C. DATE SIGNED 03/24/2010 | 16B. UNITED STATES OF AMERICA BY XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX (Signature of Contracting Officer) | 16C. DATE SIGNED XXXXXXXXXXXX |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE
30-105
STANDARD FORM 30 (REV 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

## FAR 52.252-4 -- Alterations in Contract

In accordance with FAR 52.252-4 -- Alterations in Contract (Apr 1984), Portions of this contract are altered as follows:

1.  Awarded items are Base Item 0001, Optional Items 0002, 0003, 0004, 0005, and 0006. Please note that Optional Item 0006, to install the Enhanced furniture, Fixtures, and Equipment (FF&E), while awarded, will be issued a separate notice to proceed authorizing the contractor to commence work under this line item. The contractor shall prepare and submit to the COTR a schedule giving desired dates of ordering of FF&E items to meet the contract delivery and completion schedule. The schedule/plan shall be available for review during the post award/pre-construction meeting and will be subject to the approval of the COTR.

2.  Amendments 0001 through 0007 are incorporated into the contract in full force and effect as acknowledged by the contractor.

3.  Provision H.8, Key Personnel: The following persons are assigned as key personnel:

    Project Manger - Mike Samudio
    Quality Control Manager - Bruce Leidle
    On-Site Superintendent - Bruce Craig

4.  The subcontracting plan noted in Provision H.46 below, is hereby incorporated into and made a material part of the contract.

### H.46   SUBCONTRACTING PLAN APPROVAL

The subcontracting Plan submitted by Rudolph and Sletten, Inc. dated March 24, 2010, has been approved by the Government and is incorporated herein and made part of this contract. Any modifications to this contract or modifications in excess of $550,000 will require modification of the Subcontracting Plan.

-- END OF ALTERATIONS --

3A

SECTION B
SUPPLIES OR SERVICES AND PRICES/COSTS

B.1   1352.216-70   CONTRACT TYPE (MAR 2000)

This is a firm fixed-price type contract for construction services.
(End of clause)

B.2   OPTION FOR SEPARATELY PRICED LINE ITEM

The provisions of the Option for Increased Quantity—Separately
Priced Line Item, clause as prescribed by FAR 52.217-7 is supplemented as
follows:

The Government may require the delivery of the numbered line item(s),
identified in the Schedule as an option item, in the quantity and at the price
stated in the Schedule.  Exercise of option line item(s) are at the discretion
of the Government.  The Contracting Officer may unilaterally exercise any option
line item(s) by written notice to the Contractor within 210 calendar days after
contract award.  Exercise of any option item(s) shall not extend the established
contract performance period.

B.3   DEFINITIONS

For purposes of this solicitation, the terms Offer, Offeror, or Offerors is
synonymous with the terms Bid, Bidder, or Bidders.

B.4   AMERICAN RECOVERY AND REINVESTMENT ACT OF 2009

The resulting contract is anticipated to be funded with American Recovery and
Re-Investment Act of 2009 (ARRA) funds.  Therefore, in compliance with the
transparency and accountability requirements associated with the supplemental
appropriations provided by the American Recovery and ReInvestment Act of 2009,
Public Law 111-5, particular notice shall be given to special ARRA contract
requirements implementing provisions relating to contractor reporting (FAR
52.204-11), Whistleblower Protection (FAR 52.203-15), Buy American Act (FAR
52.225-21, and 52.225-22) and access to contractor records (FAR 52.215-2 Alt I).

SECTION C
DESCRIPTION/SPECIFICATIONS/WORK STATEMENT


C.1  1352.211-70  STATEMENT OF WORK/SPECIFICATIONS (MAR 2000)

   The Contractor shall furnish the necessary personnel, material, equipment,
services and facilities (except as otherwise specified) to perform the following
the Statement of Work:

   Work to be performed will consist of furnishing all labor, materials, and
equipment, supervision, to construct a new facility to include a combination of
office, storage, chemical and biological laboratories, light industrial shops,
computer labs, conference rooms, library, telecommunication facilities,
hazardous waste storage, and parking.  The work may also include acoustic-
optical test tank facility, photo voltaic cell array renewable energy system,
and fixtures, furniture, and equipment.

   Work shall be completed in accordance with the contract documents, inclusive
of the technical specifications and drawings.  Both the technical specifications
and drawings are an attachment to this solicitation and must be downloaded from
the Government website at http://www.fbo.gov.

                          (End of clause)

NOTE:  For purposes of this solicitation, the terms "technical specifications"
and "specifications" are used interchangeably as well are the terms "plans" and
"drawings".

AB1330-10-CN-0114

SECTION D
PACKAGING AND MARKING

D.1   THERE ARE NO CLAUSES INCLUDED IN THIS SECTION.

AB1330-10-CN-0114

SECTION E
INSPECTION AND ACCEPTANCE

E.1   52.246-12   INSPECTION OF CONSTRUCTION (AUG 1996)

(a) "Definition." "Work" includes, but is not limited to, materials, workmanship, and manufacture and fabrication of components.

(b) The Contractor shall maintain an adequate inspection system and perform such inspections as will ensure that the work performed under the contract conforms to contract requirements. The Contractor shall maintain complete inspection records and make them available to the Government. All work shall be conducted under the general direction of the Contracting Officer and is subject to Government inspection and test at all places and at all reasonable times before acceptance to ensure strict compliance with the terms of the contract.

(c) Government inspections and tests are for the sole benefit of the Government and do not--

(1) Relieve the Contractor of responsibility for providing adequate quality control measures;

(2) Relieve the Contractor of responsibility for damage to or loss of the material before acceptance;

(3) Constitute or imply acceptance; or

(4) Affect the continuing rights of the Government after acceptance of the completed work under paragraph (i) of this section.

(d) The presence or absence of a Government inspector does not relieve the Contractor from any contract requirement, nor is the inspector authorized to change any term or condition of the specification without the Contracting Officer's written authorization.

(e) The Contractor shall promptly furnish, at no increase in contract price, all facilities, labor, and material reasonably needed for performing such safe and convenient inspections and tests as may be required by the Contracting Officer. The Government may charge to the Contractor any additional cost of inspection or test when work is not ready at the time specified by the Contractor for inspection or test, or when prior rejection makes reinspection or retest necessary. The Government shall perform all inspections and tests in a manner that will not unnecessarily delay the work. Special, full size, and performance tests shall be performed as described in the contract.

(f) The Contractor shall, without charge, replace or correct work found by the Government not to conform to contract requirements, unless in the public interest the Government consents to accept the work with an appropriate adjustment in contract price. The Contractor shall promptly segregate and remove rejected material from the premises.

(g) If the Contractor does not promptly replace or correct rejected work, the Government may--

(1) By contract or otherwise, replace or correct the work and charge the cost to the Contractor; or

(2) Terminate for default the Contractor's right to proceed.

(h) If, before acceptance of the entire work, the Government decides to examine already completed work by removing it or tearing it out, the Contractor, on request, shall promptly furnish all necessary facilities, labor, and material. If the work is found to be defective or nonconforming in any material respect due to the fault of the Contractor or its subcontractors, the Contractor shall defray the expenses of the examination and of satisfactory reconstruction. However, if the work is found to meet contract requirements, the Contracting Officer shall make an equitable adjustment for the additional services involved in the examination and reconstruction, including, if completion of the work was thereby delayed, an extension of time.

(i) Unless otherwise specified in the contract, the Government shall accept, as promptly as practicable after completion and inspection, all work required by the contract or that portion of the work the Contracting Officer determines can be accepted separately. Acceptance shall be final and conclusive except for

AB1330-10-CN-0114

SECTION E
INSPECTION AND ACCEPTANCE

latent defects, fraud, gross mistakes amounting to fraud, or the Government's
rights under any warranty or guarantee.
            (End of Clause)

E.2  1352.246-70  INSPECTION AND ACCEPTANCE

   The Contracting Officer or the Contracting Officer's Technical Representative
(COTR) as appointed/designated by separate letter after award in accordance with
Provision G.2 of this document is the Government's official responsible for
inspection and acceptance of required services under the terms and conditions of
this contract.
   The Government may designate additional representative(s) to provide periodic
inspections or observations during the performance of this contract.  However,
Government inspections are for the sole benefit of the Government and do not
relieve the contractor of its responsibilities to provide adequate quality
control.  The contractor is responsible for inspection of its own work to insure
that all work performed conforms to the terms and conditions of the contract.
                        (End of clause)

SECTION F
DELIVERIES OR PERFORMANCE

**F.1  52.211-10  COMMENCEMENT, PROSECUTION, AND COMPLETION OF WORK (APR 1984)**

The Contractor shall be required to
(a) commence work under this contract within **seven (7) calendar days** after the date the Contractor receives the notice to proceed,
(b) prosecute the work diligently, and
(c) complete the entire work ready for use not later than **548 calendar days** after the date the Contractor receives the notice to proceed. The time stated for completion shall include final cleanup of the premises.
(End of Clause)

**F.2  52.211-12  LIQUIDATED DAMAGES--CONSTRUCTION (SEP 2000)**

(a) If the Contractor fails to complete the work within the time specified in the contract, the Contractor shall pay liquidated damages to the Government in the amount of **$4,000.00** for each calendar day of delay until the work is completed or accepted.
(b) If the Government terminates the Contractor's right to proceed, liquidated damages will continue to accrue until the work is completed. These liquidated damages are in addition to excess costs of repurchase under the Termination clause.
(End of Clause)

**F.3  52.242-14  SUSPENSION OF WORK (APR 1984)**

(a) The Contracting Officer may order the Contractor, in writing, to suspend, delay, or interrupt all or any part of the work of this contract for the period of time that the Contracting Officer determines appropriate for the convenience of the Government.
(b) If the performance of all or any part of the work is, for an unreasonable period of time, suspended, delayed, or interrupted
(1) by an act of the Contracting Officer in the administration of this contract, or
(2) by the Contracting Officer's failure to act within the time specified in this contract (or within a reasonable time if not specified), an adjustment shall be made for any increase in the cost of performance of this contract (excluding profit) necessarily caused by the unreasonable suspension, delay, or interruption, and the contract modified in writing accordingly. However, no adjustment shall be made under this clause for any suspension, delay, or interruption to the extent that performance would have been so suspended, delayed, or interrupted by any other cause, including the fault or negligence of the Contractor, or for which an equitable adjustment is provided for or excluded under any other term or condition of this contract.
(c) A claim under this clause shall not be allowed--
(1) For any costs incurred more than 20 days before the Contractor shall have notified the Contracting Officer in writing of the act or failure to act involved (but this requirement shall not apply as to a claim resulting from a suspension order); and
(2) Unless the claim, in an amount stated, is asserted in writing as soon as practicable after the termination of the suspension, delay, or interruption, but not later than the date of final payment under the contract.
(End of Clause)

**F.4  CONSTRUCTION SCHEDULE**

In accordance with FAR 52.236-15, Schedules for Construction Contracts, the contractor shall provide a "draft" project schedule at the post award/pre-

AB1330-10-CN-0114

SECTION F
DELIVERIES OR PERFORMANCE

construction meeting, for review and comments. The project schedule shall
specifically show the time frame to accomplish the construction activities.  All
activities for completion of the work to be performed under this contract must
be shown in the schedule.

The schedule shall be in the form of a detailed automated schedule of suitable
scale to indicate appropriately the percentage of work scheduled for completion
at any given date during the performance period.  The schedule shall outline the
general sequential order in which the contractor proposes to perform the work,
the dates on which the contractor contemplates start and completion dates,
contain major contract milestones including dates for critical submittals, major
equipment deliveries, major tests/inspections, and performance of work by
special subcontractors or trades, etc.

A final project schedule shall be submitted to the Contracting Officer's
Technical Representative (COTR) for approval within 14 calendar days after
receipt of notice to proceed (NTP).  No actual or physical work is authorized to
commence on site until approval of the project schedule.  In no event will a
delay in providing an approval schedule constitute a waiver or extension of the
extablised completion date.  Once approved, the schedule shall be updated on a
continual basis.  The Government will review the contractor's schedule and will
either approve, reject, or recommend revision(s) along with supporting
rationale.  The Government will also receive and review the contractor's
periodic updates as submitted with each request for payment and recommend
appropriate action.  The contractor will continuously monitor actual progress
against the schedule, identifying any delays or potential delays and notifying
the Government.  If delays are encountered or anticipated, the contractor shall
coordinate with the Government to mitigate the delays and implement remedial
follow-up actions.

With each schedule update, the contractor shall provide a Critical Path Method
(CPM) of delivery actions, sourced from Microsoft Project or other compatible
program.  The level of representation shall detail event sequences for each
construction phase, sub-contractor work, building component delivery
(Foundation, Superstructure, HVAC system, Power, Lighting, Flooring, etc.) and
other project related Government contracts.  Any contract float time noted
within the project schedule belongs to both parties and shall be used by mutual
agreement.

F.5  DELIVERABLE SCHEDULE

Deliverables shall be provided either to the Contracting Officer or COTR, as
noted, at specified timeframes throughout the contract's performance period.
The list below is not intended to enumerate all deliverables under the contract,
but only to highlight key elements.  The contractor is responsible for all
deliverables/submittals required within the contract documents.

| REFERENCE | DELIVERABLE | DUE | DELIVER TO |
|---|---|---|---|
| F.4 | Construction Project Schedule | Draft @ Pre-construction conference | COTR |
|  |  | Final 14 calendar days after receipt of NTP | COTR |
| G.3 | Schedule of Value for Contract Payments | Prior to first payment request | COTR |
| H.5 | Insurance Coverage | Within 5 calendar days | CO |

AB1330-10-CN-0114

SECTION F
DELIVERIES OR PERFORMANCE

| | | after contract award | |
|---|---|---|---|
| H.12, H.13, I.102 | Performance & Payment Bonds | Seven days after Award | CO |
| H.22 | Approved As-Builts | 14 calendar days prior to established contract completion date | COTR |
| H.37 | Truck Efficiency Plan, Construction Emissions Management Plan, Haul Plan/Traffic Control Plan, Construction Vehicle Emissions Control Plan, Stormwater Pollution Prevention Plan (SWPPP) | Approval prior to commencing any work on-site. | COTR |
| H.44,I.100 | E-Verify | Enroll in E-Verify Program within 30 calendar days of contract award and initiate verification of employment eligibility with submission of I-90 forms | COTR |
| I.5 | Anti Kickback | As Applicable per clause requirements | COTR |
| I.9 | Code of Business Ethics and Conduct | Within 30 days after contract award provide a copy of a written code of business ethics and conduct for each employee engaged in performance of the contract and COTR | COTR |
| I.13 | Audit and Records | As Applicable per clause requirement | CO |
| I.94 | Whistleblower | Post notice of employee rights and remedies within 7 calendar days after receipt of NTP | CO |
| I.26 | Certified Payrolls | Per clause requirement | COTR |
| I.39 | Employment Reports | In accordance with clause requirement | COTR |

AB1330-10-CN-0114

SECTION F
DELIVERIES OR PERFORMANCE

| | | | |
|---|---|---|---|
| I.96 | ARRA Reporting Requirements | No later than the 10th day after each calendar quarter through on-line reporting tool | CO |
| I.93 | Hotline Poster | Display fraud hotline poster within 7 calendar days after receipt of NTP | COTR |
| I.98 | Subcontracting Plan Reporting | Quarterly reporting of ISR and SSR using eSRS database system | eSRS |
| K.1 | Contractor to Update Online Representations and Certifications Application (ORCA) website at http://orca.bpn.gov | Annually | CO |
| Technical Specifications | Submittals required by Technical Specifications | Per Specs | COTR |
| Plans | Submittals as noted on drawings | Per Plans | COTR |

AB1330-10-CN-0114

SECTION G
CONTRACT ADMINISTRATION DATA


G.1  1352.201-70  CONTRACTING OFFICER'S AUTHORITY (MAR 2000)

   The Contracting Officer is the only person authorized to make or approve any
changes in any of the requirements of this contract and notwithstanding any
provisions contained elsewhere in this contract, the said authority remains
solely in the Contracting Officer. In the event the Contractor makes any changes
at the direction of any person other than the Contracting Officer, the change
will be considered to have been made without authority and no adjustment will be
made in the contract terms and conditions, including price.
                    (End of clause)

G.2  1352.201-71  CONTRACTING OFFICER'S TECHNICAL REPRESENTATIVE (COTR) (FEB
2005)


   a.  **TO BE PROVIDED BY SEPARATE LETTER AT THE TIME OF AWARD** is hereby designated
as the Contracting Officer's Technical Representative (COTR). The COTR may be
changed at any time by the Government without prior notice to the Contractor by
a unilateral modification to the Contract. The COTR is located at:
**TO BE PROVIDED AT THE TIME OF AWARD**

   b. The responsibilities and limitations of the COTR are as follows:
   (1) The COTR is responsible for the technical aspects of the project and
serves as technical liaison with the Contractor. The COTR is also responsible
for the final inspection and acceptance of all reports and such other
responsibilities as may be specified in the contract.
   (2) The COTR is not authorized to make any commitments or otherwise obligate
the Government or authorize any changes which affect the Contract price, terms
or conditions. Any Contractor request for changes shall be referred to the
Contracting Officer directly or through the COTR. No such changes shall be made
without the expressed prior authorization of the Contracting Officer (CO). The
CO may designate assistant or alternate COTR(s) to act for the COTR by naming
such assistant/alternate(s) in writing and transmitting a copy of such
designation to the Contractor.
                    (End of clause)

G.3  PAYMENT PROCESS

   a. In accordance with FAR 52.232-5, Payments Under Fixed-Price Construction
Contracts, the Government will make progress payments **monthly** as the work
proceeds, based on estimates of the work accomplished which meets the standards
of quality established under the contract, and as approved by the Contracting
Officer.

   b. The Government will provide at the pre-construction meeting the form
Schedule of Values for Construction Contract Payment, which is required to be
completed and submitted **prior** to the first request for payment. An itemization
of value of the various work elements is required to be submitted by the
Contractor.  The estimated value of each principal category of the work should,
when added together, equal the total contract price.

   c. In preparing these estimated values, the contractor shall pro-rate costs
associated with general conditions, i.e., the cost of preparatory work,
overhead, profit, insurance, taxes, warranties, as-built drawings, etc., over
the total contract price.  Values associated with bonds, may be listed as a
separate line item and will be paid upon the Contractor's furnished evidence of
full payment.  Values associated with mobilization and demobilization shall be

AB1330-10-CN-0114

SECTION G
CONTRACT ADMINISTRATION DATA

accompanied by detailed breakdowns in support of those costs and shall be noted on the schedule as two (2) separate line items.

d. If satisfactory progress is <u>not</u> achieved during any period for which a progress payment is to be made, the Contracting Officer may withhold up to a maximum of ten (10) percent, in accordance with the FAR clause, of the amount due under an invoice and this amount shall be retained until the satisfactory execution and delivery of all submissions are achieved.  Examples of unsatisfactory progress include, but are not limited to: lack of scheduled progress, untimely submission of required deliverables, *i.e.,* reports, schedule updates, payrolls, etc.

e. A request for final payment <u>must be</u> accompanied by a release of claims.  A Release of Claims form will be provided to the contractor for use at the post award/pre-construction meeting.

f. The "Final" payment request will be rejected and returned to the Contractor if all items required under the contract have not been submitted, completed, approved, and accepted prior to the receipt of the request, *i.e.,* deficient work items, payrolls, reports, etc.

## G.4  INVOICING INSTRUCTIONS

a. The Government will provide at the pre-construction meeting an <u>Invoice for Periodic Estimate for Construction Progress Payment</u> form, which is required to be used for submission of invoices in accordance with FAR 52.232-5, Payments under Fixed-Price Construction Contracts and FAR 52.232-27, Prompt Payment for Construction Contracts.

b. All invoices shall include the following information:
   1. Name and address of the Contractor;
   2. Invoice date, number, and performance period;
   3. Contract number;
   4. Contract line item number and description, quantity, unit of measure, unit price, and extended price of supplies delivered or services performed;
   5. Where applicable, delivery and payment terms;
   6. Name and address of Contractor official to whom payment is to be sent (must be the same as that listed in CCR database, on the contract, or in a proper notice of assignment of claim;
   7. Name (where practicable), title, phone number, and mailing address of person to be notified in event of a defective invoice;
   8. For progress payments, substantiation of the amounts Requested, noted percent completion, and certification in accordance with the requirements of FAR 52.232-5, Payments under Construction Contracts;
   9. Any other information or documentation required by other requirements of the contract; and
   10. While not required, the Contractor is strongly encouraged to assign a unique identification number to each invoice or numbered consecutively for easy tracking.

c. Unless otherwise noted, invoices shall be submitted <u>monthly</u> with an original signature to the COTR for review and recommendation for approval based on the requirements of the contract and satisfactory progress.  Only "proper" invoices meeting the standards of quality established under the contract will be approved and processed for payment.

AB1330-10-CN-0114

SECTION G
CONTRACT ADMINISTRATION DATA

G.5  ADMINISTRATIVE CONTRACTING OFFICER

Judi M. Jzyk is hereby designated as the Administrative Contracting Officer
for the contract.  All correspondence and inquiries concerning administration of
this contract should be addressed to the Contract Administrator at the address
in Block 7 (page 1) of this document.

SECTION H
SPECIAL CONTRACT CLAUSES


H.1  1352.208-70  PRINTING (MAR 2000)

   Unless otherwise specified in this contract, the Contractor shall not engage
in, or subcontract for, any printing (as that term is defined in Title I of the
Government Printing and Binding Regulations in effect on the effective date of
this contract) in connection with performing under this contract. Provided,
however, that performing a requirement under this contract involving the
duplicating of less than 5,000 units of only one page, or less than 25,000 units
in the aggregate of multiple pages, such pages are not exceeding a maximum image
size of 10 and 3/4 inches by 14 and 1/4 inches, will not be deemed printing.
                        (End of clause)

H.2  1352.209-71  ORGANIZATIONAL CONFLICT OF INTEREST (MAR 2000)

   (a) The Contractor warrants that, to the best of the Contractor's knowledge
and belief, there are no relevant facts or circumstances which would give rise
to an organizational conflict of interest, as defined in FAR Subpart 9.5, or
that the Contractor has disclosed all such relevant information.
   (b) The Contractor agrees that if an actual or potential organizational
conflict of interest is discovered after award, the Contractor will make a full
disclosure in writing to the Contracting Officer. This disclosure shall include
a description of actions which the Contractor has taken or proposes to take,
after consultation with the Contracting Officer, to avoid, mitigate, or
neutralize the actual or potential conflict.
   (c) Remedies - The Contracting Officer may terminate this contract for
convenience, in whole or in part, if it deems such termination necessary to
avoid an organizational conflict of interest. If the Contractor was aware of a
potential organizational conflict of interest prior to award or discovered an
actual or potential conflict after award and did not disclose or misrepresented
relevant information to the Contracting Officer, the Government may terminate
the contract for default, debar the Contractor for Government contracting, or
pursue such other remedies as may be permitted by law or this contract.
   (d) The Contractor further agrees to insert provisions which shall conform
substantially to the language of this clause, including this paragraph (d), in
any subcontract or consultant agreement hereunder.
                        (End of clause)

H.3  1352.209-72  RESTRICTIONS AGAINST DISCLOSURE (MAR 2000)

   a. The Contractor agrees, in the performance of this contract, to keep the
information furnished by the Government and designated by the Contracting
Officer or Contracting Officer's Technical Representative in the strictest
confidence. The Contractor also agrees not to publish or otherwise divulge such
information in whole or in part, in any manner or form, nor to authorize or
permit others to do so, taking such reasonable measures as are necessary to
restrict access to such information while in the Contractor's possession, to
those employees needing such information to perform the work provided herein,
i.e., on a "need to know" basis. The Contractor agrees to immediately notify the
Contracting Officer in writing in the event that the Contractor determines or
has reason to suspect a breach of this requirement.
   b.  The Contractor agrees that it will not disclose any information described
in Subsection A to any persons or individual unless prior written approval is
obtained from the Contracting Officer. The Contractor agrees to insert the
substance of this clause in any consultant agreement or subcontract hereunder.
                        (End of clause)


AB1330-10-CN-0114

SECTION H
SPECIAL CONTRACT CLAUSES

**H.4  1352.209-73  COMPLIANCE WITH THE LAWS (MAR 2000)**

The Contractor shall comply with all applicable laws and rules and regulations
having the force of law which deal with or relate to performance hereunder or
the employment by the Contractor of the employees.
(End of clause)

**H.5  1352.228-70  INSURANCE COVERAGE (MAR 2000)**

Pursuant to the clause "Insurance-Work on a Government Installation (FAR
52.228-5)," the Contractor will be required to present evidence to show, as a
minimum, the amounts of insurance coverage indicated below:
a. Workers Compensation and Employer's Liability. The Contractor is required
to comply with applicable federal and state workers' compensation and
occupational disease statutes. If occupational diseases are not compensable
under those statutes, they shall be covered under the employer's liability
section of the insurance policy, except when contract operations are so
commingled with a Contractor's commercial operations that it would not be
practical to require this coverage. Employer's liability coverage of at least
$100,000 shall be required, except in states with exclusive or monopolistic
funds that do not permit workers' compensation to be written by private
carriers.
b. General Liability.
1. The Contractor shall have bodily injury liability insurance coverage
written on the comprehensive form of policy of at least $500,000 per occurrence.
2. Property Damage Liability Insurance shall be required in the amount of
$-0-.
c. Automobile Liability. The Contractor shall have automobile liability
insurance written on the comprehensive form of policy. The policy shall provide
for bodily injury and property damage liability covering the operation of all
automobiles used in connection with performing the contract. Policies covering
automobiles operated in the United States shall provide coverage of at least
$200,000 per person and $500,000 per occurrence for bodily injury and $20,000
per occurrence for property damage.
d. Aircraft Public and Passenger Liability. When aircraft are used in
connection with performing the contract, the Contractor shall have aircraft
public and passenger liability insurance. Coverage shall be at least $200,000
per person and $500,000 per occurrence for bodily injury, other than passenger
liability, and $200,000 per occurrence for property damage. Coverage for
passenger liability bodily injury shall be at least $200,000 multiplied by the
number of seats or passengers, whichever is greater.
e. Vessel liability. When contract performance involves use of vessels, the
contracting officer shall require, as determined by the agency, vessel collision
liability and protection and indemnity liability insurance.
(End of clause)

**H.6  1352.228-72  DEDUCTIBLES UNDER REQUIRED INSURANCE COVERAGE (MAR 2000)**

When the Government is injured, wholly or partially as a result of the
Contractor's actions and such actions are covered by the insurance required by
1352.228-70, Insurance Coverage, the Government is entitled to recover from the
Contractor the full amount of any such injury attributable to the Contractor
regardless of an deductible. The Contracting Officer may offset the amount of
recovery against any payment due to the Contractor.
(End of clause)

AB1330-10-CN-0114

SECTION H
SPECIAL CONTRACT CLAUSES

H.7  1352.233-70  HARMLESS FROM LIABILITY (MAR 2000)

The Contractor shall hold and save the Government, its officers, agents, and employees harmless from liability of any nature or kind, including costs and expenses to which they may be subject to or on account of any or all suits or damages of any character whatsoever resulting from injuries or damages sustained by any person or persons or property by virtue of performance of this contract, arising or resulting in whole or in part from the fault, negligence, wrongful act or wrongful omission of the contractor, or any subcontractor, their employees, and agents.

(End of clause)

H.8  1352.237-73  KEY PERSONNEL (MAR 2000)

a. The Contractor shall assign to this contract the following Key Personnel:

Project Manager, Quality Control Manager, On-site Superintendent

b. The Contractor shall obtain the consent of the Contracting Officer prior to making Key Personnel substitutions.  Replacements for Key Personnel must possess qualifications equal to or exceeding the qualifications of the personnel being replaced specified.

c. Requests for changes shall be submitted to the Contracting Officer at least 15 working days prior to making any permanent substitutions.  The request should contain a detailed explanation of the circumstances necessitating the proposed substitutions, complete resumes for the proposed substitutes, and any additional information requested by the Contracting Officer. The Contracting Officer will notify the Contractor within 10 working days after receipt of all required information of the decision on substitutions.  The contract will be modified to reflect any approved changes.

(End of clause)

H.9  1352.242-71  POST-AWARD CONFERENCE (MAR 2000)

A post-award/pre-construction conference with the contractor is required.  The conference will be held in La Jolla, California, and the contractor will be notified within 15 calendar days after the date of contract award to coordinate and confirm the specific date, time, and conference location, and any need for attendance by subcontractors, and information regarding the items to be discussed.

(End of clause)

H.10  1352.252-70  REGULATORY NOTICE (MAR 2000)

Contractors are advised that certain provisions and clauses identified with a Commerce Acquisition Regulation (CAR) notation (1352.XXX-XX) for identification purposes, have not yet been incorporated into the CAR. However, all of these items are binding for this acquisition and will eventually be contained in the CAR at Part 13 of Title 48 of the Code of Federal Regulations.

(End of clause)

H.11  DEFINITIONS

For the purpose of this contract, the term Project Officer or Project Engineer is synonymous with the term Project Manager.

AB1330-10-CN-0114

Page - 18

SECTION H
SPECIAL CONTRACT CLAUSES

H.12  NOTICE OF REQUIRED PERFORMANCE BOND

   The contractor shall furnish bonding to guarantee faithful performance of the
contract in the amount of 100 percent of the total contract price.  Bonding
shall be in the form of a performance bond on Standard Form 25 (available online
See Section J for website), or in the form of a certified or cashier's check,
irrevocable letter of credit, Post Office money order, or currency, or United
States Government bonds or notes (at par value) deposited in accordance with
Treasury Regulations.  Money orders and checks shall be drawn payable to: U.S.
Department of Commerce, NOAA.  Resulting contract is subject to the Miller Act;
therefore, the security interest shall be maintained until completion of any
warranty period (applicable only to performance bonds).

H.13  NOTICE OF REQUIRED PAYMENT BOND

   The contractor shall furnish bonding to guarantee faithful payment to all
persons supplying labor or materials in the performance of the contract in the
amount of 100 percent of the total contract price. Bonding shall be in the form
of a payment bond on Standard Form 25A (available online See Section J for
website), or in the form of a certified or cashier's check, irrevocable letter
of credit, Post Office money order, or currency, or United States Government
bonds or notes (at par value) deposited in accordance with Treasury Regulations.
Money orders and checks shall be drawn payable to: U.S. Department of Commerce,
NOAA.  Resulting contract is subject to the Miller Act; therefore, the security
interest shall be maintained pending resolution of all claims filed against the
payment bond during the 1-year period following final payment.

H.14  SITE OWNERSHIP

   Contractors are advised that this project will be performed on land wholly
owned by the Regents of the University of California.  A Ground Lease has been
issued to The United States of America, acting by and through The Department of
Commerce, National Oceanic and Atmospheric Administration.

H.15  ARCHITECT/ENGINEER

   "Architect/Engineer" (A/E) refers to the professional services contractor for
this project.  The Contractor shall not deal directly with the architect in any
manner.  All contact with the architect shall be done through the Government's
COTR.  Contractor questions regarding any item in this solicitation, including
requests for clarifications, shall be sent in writing to the Contract Specialist
in accordance with Provision L.10, Inquiries.

   The A/E is currently responsible for the design only.  The A/E may provide
certain construction contract administration/post-construction services in the
future and may include the review of and recommended action on all submittals
(including schedules, shop drawings, catalog cuts, and samples), change orders,
time extensions, and like matters to the Government.  However, the main point of
contact shall remain the Government's COTR.

H.16  USE OF PREMISES

   FAR 52.236-10, Operations and Storage Areas, states that "The Contractor
shall, under regulations prescribed by the Contracting Officer or his/her
appointed representative, use only established roadways, or use temporary
roadways constructed by the Contractor when and as authorized by the Contracting
Officer."  The Contractor shall provide dust control measures on the contract
site and on access roads leading to the contract site by water sprinkling,

AB1330-10-CN-0114

SECTION H
SPECIAL CONTRACT CLAUSES

calcium treatment, or similar methods as approved by the Contracting Officer or his/her appointed representative.

H.17  SUBCONTRACTS

(a) Nothing contained in the contract shall be construed as creating any contractual relationship between any subcontractor and the Government.  The divisions or sections of the specifications are not intended to control the contractor in dividing the work among subcontractors, or to limit the work performed by any trade.

(b) The contractor shall be responsible to ensure that all contract information, including all flow-down clauses, is provided to each subcontractor tier.

(c) The contractor shall be responsible to the Government for acts and omissions of his own employees, and of subcontractors and their employees.  The contractor shall also be responsible for the coordination of the work of the trades, subcontractors, and suppliers.

(d) The Government will not undertake to settle any differences between or among the contractor and his subcontractors or suppliers.

(e) The contractor shall, without additional expense to the Government, employ specialty subcontractors where required by the specifications.  "Specialty Subcontractors," when specified as a requirement, means a subcontractor regularly engaged in the manufacture or installation of the contract items.  The specialty subcontractor shall select and combine the materials involved, maintain and have available for the purpose, workmen skilled in the specified work.  The specialty subcontractor shall be the manufacturer, be licensed by the manufacturer as an installer, or work under direct supervision of the manufacturer.

H.18  COORDINATION OF TRADES

Drawings are in part diagrammatic, which show the general arrangement of work rather than specifics.  The contractor shall employ a competent on-site engineer/superintendent to coordinate all field work and shop drawings of the various trades prior to submission of shop drawings for approval and prior to installation of any work.  Spaces shall be allotted to the various trades prior to the installation of the work.  In spaces where all the various installations cannot be accommodated, the Contractor shall, prior to fabrication or installation of work, notify the Contracting Officer or his/her appointed representative, and submit suggestions for a solution.  The contractor shall be responsible for coordination of the various trades and coordination of all supplier(s) material deliveries.

H.19  USE OF POWER EQUIPMENT BY CONTRACTOR

If elevator(s) is used for temporary service during construction it shall be provided with temporary platform(s) and cab(s) complying with American National Standards Institute "Safety Code for Building Construction" during the period of use.  Before acceptance by the Government, new hoisting and governor ropes shall be installed, brake shoes re-lined, worn or damaged controller parts replaced and other equipment placed in condition equal to new.

SECTION H
SPECIAL CONTRACT CLAUSES

H.20   STANDARD REFERENCES

(a) Any materials, equipment, or workmanship specified by reference to the
number, symbol, or title of any specific standard shall comply with the latest
edition or revision thereof, and any amendment or supplement thereto, in effect
on the due date of the proposals, except as limited to type, class or grade, or
modified in the specifications.

(b) Standards referred to in the plans and specifications, except as modified,
shall have full force and effect as though printed in full text in the plans and
specifications.

(c) The contractor shall have access to a complete and current set of
manufacturers' and federal standards referenced in the solicitation on site
either in hardcopy or by internet.

H.21   CODE COMPLIANCE

Contractor shall be responsible for complying with all current city, state,
local, and federal ordinances and codes, *e.g.*, OSHA, DOL, and EPA regulations.

H.22   AS-BUILT DRAWINGS

(a) The Contractor shall maintain one (1) set of completed and up-to-date
paper reproducible drawings, which shall be available for inspection by the
Contracting Officer or his/her appointed representative, at any time during the
progress of the work.  These drawings shall be marked-up to record all changes
in the work as they occur, in such a manner as will provide a complete, accurate
as-built record.

(b) The contractor shall submit one (1) set of completed and up-to-date record
drawings in both red-lined mark-up format and in electronic format which
highlights recorded changes onto the project construction document files.
Drawings will be completed in the most current version of AutoCAD, the text
documents in the most current version of Microsoft Word.  The completed set of
as-built drawings, both paper and electronic formats, shall be delivered to the
Contracting Officer or his/her appointed representative.  As-builts shall be
submitted for review/approval as a condition precedent to the request for final
inspection of the work.  Final submission shall be provided to the COTR a
minimum of 14 calendar days prior to the established contract completion date.

H.23   HOURS OF WORK

All work shall be performed between 7:00 a.m. and 5:00 p.m. local time, Monday
through Friday.  In the event that the Contractor wishes to work on the day of a
Government holiday, he shall notify the Contracting Officer or his/her appointed
representative, a minimum of seven (7) calendar days in advance of the date he
wishes to work.  If the Contractor wishes to schedule work on weekends, he shall
notify the Contracting Officer or his/her appointed representative, prior to
3:00 p.m., Seattle time on the preceding Thursday.  No work outside the
performance periods noted above shall be undertaken without prior approval from
the Government.

H.24   MATERIALS ON-SITE

Unless otherwise provided in the specifications or drawings, materials removed
and not reused under the contract shall become the property of the Contractor.
The materials shall be removed from the site by the Contractor; and storage or
sale of the materials on the site will not be permitted.

AB1330-10-CN-0114

SECTION H
SPECIAL CONTRACT CLAUSES

H.25  SAMPLES

FAR 52.236-5, Material and Workmanship, states that "When required by this
contract or by the Contracting Officer, the Contractor shall also obtain the
Contracting Officer's approval of the materials or articles which the Contractor
contemplates incorporating into the work.  When requesting approval, the
Contractor shall provide full information concerning the material or articles.
When directed to do so, the Contractor shall submit samples for approval at the
Contractor's expense, with all shipping charges prepaid.  Machinery, equipment,
material, and articles that do not have the required approval shall be installed
or used at the risk of subsequent rejection."  The following is the full
information required by the Contracting Officer regarding the submission of
samples:

  (a) Samples shall be submitted within seven (7) calendar days after date of
receipt of Notice to Proceed, unless otherwise specified.

  (b) Each sample shall have a label indicating:

       1. Name of project and contract number;
       2. Name of Contractor and subcontractor;
       3. Material or equipment represented;
       4. Place of origin;
       5. Name of producer and brand;
       6. Location of project;
       7. The section of Specification's to which the sample applies.

  Samples of finished materials shall have additional markings for
identification under the finished schedules.

  (c) The Contractor shall transmit by letter, to the Contracting Officer or
his/her appointed representative, samples containing the information stated in
paragraph (b) above, and if applicable, enclosing a copy of the letter with the
samples, and sending a copy to the Government representative on the project.

  (d) Approval of a sample shall be only for the characteristics or use named in
such approval and shall not be construed to change or modify any contract
requirements, or relieve the Contractor from any of his responsibilities.
Before submitting samples, the Contractor shall assure himself that the
materials or equipment will be available in the quantities required in the
project; because no change or substitution will be permitted after a sample has
been approved.

  (e) Materials and equipment incorporated in the work shall match the approved
samples.  If requested, approved samples, including those which may be damaged
in testing, will be returned to the Contractor, at his expense, upon completion
of the contract.  Samples not approved will also be returned to the Contractor
at his expense, if so requested.

  (f) Failure of any material to pass the specified tests will be sufficient
cause for refusal to consider, under this contract, any further samples of the
same brand or make of that material.  The Government reserves the right to
disapprove any material or equipment which previously has proved unsatisfactory
in service.

  (g) Variations from the contract requirements shall be specifically pointed
out in transmittal letters.  Failure to point out deviations may result in the

AB1330-10-CN-0114

SECTION H
SPECIAL CONTRACT CLAUSES

Government requiring rejection and removal of such work at no additional cost to the Government.

(h) Samples of various materials or equipment delivered on the site or in place may be taken by the Contracting Officer for testing. Samples failing to meet contract requirements will automatically void previous approvals. The Contractor shall replace such materials or equipment to meet contract requirements, or there shall be an adjustment of the contract price as determined by the Contracting Officer.

(i) When tests are required, only one test of each sample proposed for use will be made at the expense of the Government. Samples which do not meet specification requirements will be rejected. Testing additional samples will be done by the Government at the expense of the Contractor.

(j) The Contractor shall furnish additional certification on conformance to the specification requirements as may be requested by the Contracting Officer or his/her appointed representative.

H.26  SALVAGE

The Government does not assume responsibility for any loss or damage to materials removed and not reused under the contract which become the property of the Contractor.

H.27  MATERIAL STORED ON-SITE

Material stored on site may be included in earned progress if the Contractor furnishes satisfactory evidence that it has acquired title to such material and that the material will be incorporated into the contract. Payment for material stored on-site shall only be made after inspection by the COTR to ensure that the material is stored in a secure manner. Payment for material stored off-site may be included in earned progress payment if (1) all of the above conditions are met; and (2) the storage site is not more than 25 miles from the current work site. Prior approval and inspection of secured storage area must be obtained from the Contracting Officer or his/her appointed representative.

All material covered under progress payments, become the sole property of the Government; however, this shall not be construed as (1) relieving the contractor from the sole responsibility for all material and work upon which payments have been made, the restoration of any damaged work, or the replacement of any stolen or damaged materials; or (2) waiving the right of the Government to require the fulfillment of all of the terms of the contract.

H.28  CONSTRUCTION SIGN(S)

In accordance with the technical specifications, the Contractor shall furnish and erect signs on the site of the project as soon as practicable after commencement of work, located where directed by the Contracting Officer or his/her appointed representative.

H.29  SAFETY BARRICADES

(a) Provide safety barricades in accordance with requirements of the Uniform Building Code for the State of California, all local, and federal ordinances and codes, and in compliance with OSHA regulations.

(b) Barricades shall be removed upon completion of the project.

AB1330-10-CN-0114

SECTION H
SPECIAL CONTRACT CLAUSES

H.30  CEREMONIES

Subject to mutually satisfactory arrangements between the parties to the contract, the Government may enter the premises during the term of the contract to conduct ceremonies, such as laying the cornerstone or dedication ceremonies, and to occupy temporarily such portions of the premises for the event.  The ceremony area shall be cleared and cleaned of all contract activities.  The contractor shall clear all work from the area and make every effort to cease and/or reduce the noise level in and around the premises during the time set for the ceremony.

H.31  VACATING OF PREMISES

The premises will be vacant during performance of the work under the contract; however, properties adjacent to this project will be occupied and operational. Therefore, the contractor shall be familiar with the surrounding activities and avoid interruptions to operations on those properties and in accordance with the technical specifications.

H.32  SANITARY CONVENIENCES

Contractor shall provide a temporary chemical type sanitary convenience, at an approved location, for use by employees on the contract.  The convenience premises shall receive daily attention, shall be maintained in a clean and sanitary condition, and shall be at the expense of the Contractor and in accordance with the technical specifications.

H.33  TEMPORARY WATER

A water system is not available on the site for contract work.  Contractor shall make his own arrangements for water in accordance and shall be at the expense of the Contractor and in accordance with the technical specifications.

H.34  TEMPORARY LIGHT AND POWER

(a) The Contractor shall furnish and install temporary electrical facilities, including lamps, for construction and safety operations.  All temporary facilities shall remain the property of the Contractor, and be removed after permanent connections have been completed.  Should temporary facilities interfere with Government operations or other construction activities, the Contractor, upon notification by the Contracting Officer or his/her appointed representative, shall relocate the temporary facilities, at no cost to the Government.  Electrical wiring, conduit or equipment which are part of permanent electrical systems, shall not be used for temporary electrical facilities, unless specifically approved by the Contracting Officer or his/her appointed representative.  The Contractor shall be responsible for any damage or injury to equipment, materials, or personnel caused by temporary electrical installations. Costs for materials and installation of temporary electrical facilities shall be at the expense of the Contractor and in accordance with the technical specifications.

(b) Contractor shall arrange and pay for energy consumed in providing temporary electrical facilities until acceptance of the facility or possession is taken by the Government, whichever comes first.  Contractor shall install and maintain, at his own expense, connections and facilities in locations and in a manner approved by the Contracting Officer or his/her appointed representative.

(c) The hours of operation, level of illumination and coverage for safety of personnel shall meet minimum requirements.

AB1330-10-CN-0114

SECTION H
SPECIAL CONTRACT CLAUSES

H.35  MONUMENTS AND BENCH MARKS

(a) In accordance with existing property survey, general reference points have been established on the property to enable the Contractor to proceed with the work.  The Contractor will provide new monuments where shown or specified.  If the Contractor finds that any previously established reference points have been destroyed or displaced, or that none have been established, the Contracting Officer or his/her appointed representative shall be promptly notified.

(b) The Contractor shall protect and preserve the established bench marks and monuments, and shall make no changes in locations without the written approval of the Contracting Officer.  Any monuments or bench marks lost, destroyed or disturbed because of changes in grades or locations shall, subject to prior approval by the Contracting Officer or his/her appointed representative, be replaced and accurately located or relocated at the Contractor's expense, by a licensed engineer or land surveyor.

H.36  MEASUREMENTS

All dimensions shown on the drawings and/or in the specifications shall be verified by the Contractor by actual measurements of the existing conditions. Any discrepancies between the drawings and specifications and the existing conditions shall be referred to the Contracting Officer for adjustment before any work affected thereby has been performed.

H.37  TRUCKING

(a) All trucks, bringing to or removing from the site, earth, loose materials, or debris shall be loaded and properly covered in a manner to prevent dropping of any materials on streets.  In accordance with the technical specifications, the contractor shall submit a Truck Efficiency Plan, Construction Emissions Management Plan, Haul Plan/Traffic Control Plan, Construction Vehicle Emissions Control Plan, Stormwater Pollution Prevention Plan (SWPPP), for approval prior to commencing any work on-site.

(b) At all points, where trucks leave the project site and enter adjacent paved streets, the Contractor shall maintain an installation and crew to prevent any mud from being carried onto such adjacent paved streets.

(c) Earth, loose materials, or debris deposited on the streets due to contract trucking activities shall be removed daily.

H.38  CONSTRUCTION STAGING AREA

In accordance with the technical specifications, an off-site construction staging area of approximately 50,000 square feet has been identified for contractor project use at the University of California San Diego (UCSD) Gliderport Construction Staging Area.  The identified staging area is located adjacent to Torrey Pines Scenic Drive directly South of the Torrey Pines Golf Course.  This staging area shall also be utilized for contractor staff parking to mitigate construction impacts on the immediate neighborhood.  Contractor shall employ an employee shuttle system to and from the construction site to the staging area parking.  The shuttle system shall be in operation throughout the project's construction period.

A near-site construction staging area of approximately 4,400 square feet has been identified for contractor project use primarily for construction trailers. The near-site construction staging area is located directly South of the

AB1330-10-CN-0114

SECTION H
SPECIAL CONTRACT CLAUSES

construction site in the UCSD/Keck Building parking lot P014.  As an estimated nineteen (19) parking stalls will be temporarily displaced while utilizing this staging area the contractor will be required to coordinate the use of this area with the UCSD Transportation and Parking Services, and shall be subject to any fee schedules in effect for such use.  The use of this near-site construction staging area is at contractor option and expense.  Contractor shall coordinate their planned use of this area with Ginger Truschke, Associate Director, UCSD Real Estate (858) 534-1494.

**H.39  CONTRACT MODIFICATIONS (CHANGES) OR EQUITABLE ADJUSTMENTS**

The provisions of the Changes clause as prescribed by FAR 52.243-4 are supplemented as follows:

(a) Any party may identify the need for a change to the contract.  Such changes <u>must</u> be approved by the Contracting Officer and will then be made part of the contract through a contract modification (SF-30).

(1)  Typically, a written request for a cost proposal (RFCP) will be issued to the contractor through the COTR.  This RFCP will describe the changed requirements of the contract.

(2)  The Contractor shall submit a detailed price breakdown, per the requirements and limitations set forth in the RFCP.  The proposal shall be submitted in a format which would permit the COTR an analysis of all material, labor, equipment, subcontract costs, and markup.  For example:
- <u>Material</u> quantities by trades and unit costs (Manufacturing burden associated with material fabrication performed will be considered to be part of the material costs of the fabricated item delivered to the job site);
- <u>Labor</u> breakdown by trades and unit costs (identified with a specific item of material to be placed or operation to be performed);
- <u>Workers Compensation</u> and Public Liability Insurance Employment taxes under FICA and FUTA;
- <u>Equipment</u> costs in accordance with the provision titled "Equipment Ownership and Operating Expense Schedule";
- <u>Bond Costs</u> (when magnitude of change warrants additional bonding); and
- <u>Markup percentages</u> (profit, overhead, material handling) applied to any change.  For a change that both increases and decreases items of the specified work under the contract, the application of markup shall be on the net change (either increase or decrease) in direct costs for the Contractor or subcontractor performing the work.

Note:  Itemized costs associated with field overhead are not recoverable (allowable) in situations where the contract performance time is not extended.

(3)  Subcontractor proposals must also be in the same level of detail.

(4)  The cost proposal shall cover all work involved in the change whether work is added, deleted, or revised.

(5)  The Contractor shall submit the cost proposal within the time limit indicated in the request or any extension of such time limit as the Contracting Officer may subsequently grant.

(6)  The Contractor shall submit with its proposal, any request for a time extension.  Additional time shall be justified and supporting documentation

AB1330-10-CN-0114

SECTION H
SPECIAL CONTRACT CLAUSES

shall include sufficient information which clearly demonstrates the number of days and to what extent the change will cause delay in the overall completion of the contract.

(b) The percentages for commission, overhead, and profit which will be allowed by the Government may vary according to the nature, extent, and complexity of the work involved, but in no case shall exceed the following guidelines:

Only costs allowed within the principles and procedures of FAR Part 31 will be considered within costs attributable to overhead.  In no case shall the commission, profit or overhead exceed the following unless the contractor clearly demonstrates entitlement to a higher percentage:

| Work Performed By: | Maximum Potential Charges | Commission | Profit | Overhead |
|---|---|---|---|---|
| //////////////////////////////////////////////////////////////////// | | | | |
| Prime Contractor's Own Workforce | Prime Contractor | | 10% | 10% |
| //////////////////////////////////////////////////////////////////// | | | | |
| Subcontractor's Workforce | Subcontractor | | 10% | 10% |
| | Prime Contractor | 5% | | |
| //////////////////////////////////////////////////////////////////// | | | | |
| Sub-Subcontractor's Workforce | Sub-Subcontractor | | 10% | 10% |
| | Subcontractor | 5% | | |
| | Prime Contractor | 5% | | |

In no instance shall the Government provide for more than three (3) tiers or layers of profit and or commission, irrespective of the number of tiers or layers of purchase, acquisition or contracting.  Neither overhead charges nor profit shall be allowed by any entity that does not directly incur costs of the work performed.

Equitable adjustments for deleted work shall include credits for overhead, profit and/or commission at the same level as costs would have been incurred.  If a proposal includes both increases and decreases in the contract price, the application of overhead and profit shall be on the net change in direct costs to the Contractor, Subcontractor or Sub-Subcontractor performing the work.

Unless otherwise defined by Contract terms and conditions or separate rate agreement, overhead, profit and commissions include all indirect and other direct costs of the Work.  Where appropriate, the cost of bonds and insurance shall be reflected as a separate line of cost.

(c) After receipt of the Contractor's cost proposal, the Contracting Officer shall act in a timely manner to complete negotiations and processing of a modification (SF-30).  However, should the necessity to proceed with a change not allow time for the normal process of review and agreement to occur or should the parties be unable to reach an agreement on a submitted proposal, the Contracting Officer may direct the Contractor to proceed with the change to avoid additional delay.  Either written or verbal approval from the Contracting Officer authorizing the Contractor to proceed may be issued based on a "Not to

AB1330-10-CN-0114

SECTION H
SPECIAL CONTRACT CLAUSES

Exceed" price.  A modification (SF-30) to formalize the change will be completed within the time period specified in the authorization to proceed.

H.40  CONTRACT PRICING OF ADJUSTMENTS

(a) When costs are a determining factor in a contract price adjustment pursuant to the "Changes" clause or any other clause of this contract, such costs shall be allowable in accordance with the provisions of this contract and the contract cost principles and procedures in Part 31 of the Federal acquisition Regulation (48 CFR 1-31) in effect on the date of this contract.

(b) When a contract adjustment includes equipment, the following shall govern:

(1)  Allowable cost for construction and equipment in sound workable condition owned or controlled and furnished by a contractor or subcontractor at any tier shall be based on actual cost data for each piece of equipment or groups of similar serial and series for which the Government can determine both ownership and operating costs from the contractor's accounting records. When both ownership and operating costs cannot be determined for any piece of equipment or groups similar or series equipment from contractor's accounting records, costs for that equipment shall be based upon the applicable provisions of EP 1110-1-8, Construction Equipment Ownership and Operating Expense Schedule, Region IX, published by the U.S. Army Corps of Engineers. Working conditions shall be considered to be average for determining equipment rates using the schedule unless specified otherwise by the Contracting Officer.  For equipment not included in the schedule, rates for comparable pieces of equipment may be used or a rate may be developed using the formula provided in the schedule.  For forward pricing, the schedule in effect at the time of negotiations shall apply. For retroactive pricing, the schedule in effect at the time the work was performed shall apply.

(2)  Equipment rental costs are allowable, subject to the provisions of FAR 31.105(d)(ii) and FAR 31.205-36.  Rates for equipment rented from an organization under common control, lease-purchase arrangements, and sale-leaseback arrangements, will be determined using the schedule, except that actual rates will be used for equipment leased from an organization under common control that has an established practice of leasing the same or similar equipment to unaffiliated lessees.

(3)  When actual equipment costs are proposed and the total amount of the pricing action exceeds $100,000, the contracting officer shall request the contractor to submit either certified cost or pricing data, or partial/limited data, as appropriate.

(c)  Any change under this clause resulting in an increase or decrease of dollars, time, or both, shall be cause for an equitable adjustment to the contract, and modified in writing.

H.41  CLAIM ASSERTION

The provisions of the Disputes clause as prescribed by FAR 52.233-1 are supplemented as follows:

A claim is defined as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract.  Submissions of a valid claim by a contractor must be presented to the Contracting Officer as a separate and

AB1330-10-CN-0114

SECTION H
SPECIAL CONTRACT CLAUSES

complete action.  It must provide a clear and unequivocal statement that gives
the contracting officer adequate notice of the basis of the claim and
specifically states, as a sum certain, the monetary relief that is sought.  A
claim by the Contractor shall be submitted within 1 year after accrual of the
claim to the Contracting Officer for a written decision.

The Contractor shall proceed diligently with performance of this contract,
pending final resolution of any request for relief, claim, appeal, or action
arising under the contract, and comply with any decision of the Contracting
Officer.

### H.42  ARCHAEOLOGICAL OR HISTORIC SITES

If a previously unidentified archaeological or historic site(s) is
encountered, the contractor shall immediately discontinue work in the general
area of the site(s) and notify the COTR.

### H.43  SUBMITTALS

The Contractor shall provide six (6) copies, except as otherwise specified,
of all required submittals, including but not limited to, shop drawings,
samples, product data, certifications, warranties, and instructions to the
Contracting Officer or his/her appointed representative for review unless
otherwise indicated in the technical specifications.

### H.44  EMPLOYMENT ELIGIBILITY VERIFICATION

The provisions of the Employment Eligibility Verification clause as
prescribed by FAR 52.222-54 are supplemented as follows:

As the Federal Government supports a legal workforce, contractors are required
to enroll as a Federal Contractor in the E-Verify database system.  Information
on registration for and use of the E-Verify program can be obtained via the
Internet at the Department of Homeland Security Web site:
                    *http://www.dhs.gov/E-Verify*

### H.45  SUBCONTRACT REPORTS
(Not Applicable to Small Business Concerns)

Reference FAR 52.219-9, Small Business Subcontracting Plan.  The
Contractor shall submit periodic reports so that the Government can determine
the extent of compliance by the contractor with the subcontracting plan.  The
Contractor shall submit the required Individual Subcontract Report (ISR), and
the Summary Subcontract Report (SSR) using the Electronic Subcontracting
Reporting System (eSRS) (http://www.esrs.gov ), following the instructions in
the eSRS.  Once the contractor has completed entry of either an ISR or SSR
report, an email notification to the Contracting Officer is required.

### H.46  SUBCONTRACTING PLAN APPROVAL

The subcontracting Plan submitted by _____* dated
_____*, has been approved by the Government and is incorporated
herein and made part of this contract.  Any modifications to this contract or
modifications in excess of $550,000 will require modification of the
Subcontracting Plan.

*Information to be completed prior to award.

AB1330-10-CN-0114

SECTION H
SPECIAL CONTRACT CLAUSES

**H.47  REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS**

In accordance with FAR 15.204-1(b), the completed and submitted
"Representations, Certifications, and Other Statements of Offeror", including
those posted on the Government's On-line Representations and Certifications
Application (ORCA) website, are hereby incorporated by reference upon award of a
contract and are required to be updated annually.

SECTION I
CONTRACT CLAUSES

I.1   52.202-1   DEFINITIONS (JUL 2004)

I.2   52.203-3   GRATUITIES (APR 1984)

I.3   52.203-5   COVENANT AGAINST CONTINGENT FEES (APR 1984)

I.4   52.203-6   RESTRICTIONS ON SUBCONTRACTOR SALES TO THE GOVERNMENT (SEP 2006)

I.5   52.203-7   ANTI-KICKBACK PROCEDURES (JUL 1995)

I.6   52.203-8   CANCELLATION, RESCISSION, AND RECOVERY OF FUNDS FOR ILLEGAL OR IMPROPER ACTIVITY (JAN 1997)

I.7   52.203-10   PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY (JAN 1997)

I.8   52.203-12   LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (SEP 2007)

I.9   52.203-13   CONTRACTOR CODE OF BUSINESS ETHICS AND CONDUCT (DEC 2008)

I.10   52.204-4   PRINTED OR COPIED DOUBLE-SIDED ON RECYCLED PAPER (AUG 2000)

I.11   52.204-7   CENTRAL CONTRACTOR REGISTRATION (APR 2008)

I.12   52.209-6   PROTECTING THE GOVERNMENT'S INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENDED, OR PROPOSED FOR DEBARMENT (SEP 2006)

I.13   52.215-2 I   AUDIT AND RECORDS--NEGOTIATION (MAR 2009)--ALTERNATE I

I.14   52.215-8   ORDER OF PRECEDENCE--UNIFORM CONTRACT FORMAT (OCT 1997)

I.15   52.215-11   PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA-- MODIFICATIONS (OCT 1997)

I.16   52.215-13   SUBCONTRACTOR COST OR PRICING DATA--MODIFICATIONS (OCT 1997)

I.17   52.215-21 IV   REQUIREMENTS FOR COST OR PRICING DATA OR INFORMATION OTHER THAN COST OR PRICING DATA--MODIFICATIONS (OCT 1997)--ALTERNATE IV (OCT 1997)

I.18   52.219-4   NOTICE OF PRICE EVALUATION PREFERENCE FOR HUBZONE SMALL BUSINESS CONCERNS (JUL 2005)

I.19   52.219-8   UTILIZATION OF SMALL BUSINESS CONCERNS (MAY 2004)

I.20   52.219-16   LIQUIDATED DAMAGES--SUBCONTRACTING PLAN (JAN 1999)

I.21   52.222-3   CONVICT LABOR (JUN 2003)

I.22   52.222-4   CONTRACT WORK HOURS AND SAFETY STANDARDS ACT--OVERTIME COMPENSATION (JUL 2005)

I.23   52.222-5   DAVIS-BACON ACT -- SECONDARY SITE OF THE WORK (JUL 2005)

I.24   52.222-6   DAVIS-BACON ACT (JUL 2005)

I.25   52.222-7   WITHHOLDING OF FUNDS (FEB 1988)

AB1330-10-CN-0114

SECTION I
CONTRACT CLAUSES

I.26   52.222-8  PAYROLLS AND BASIC RECORDS (FEB 1988)

I.27   52.222-9  APPRENTICES AND TRAINEES (JUL 2005)

I.28   52.222-10  COMPLIANCE WITH COPELAND ACT REQUIREMENTS (FEB 1988)

I.29   52.222-11  SUBCONTRACTS (LABOR STANDARDS) (JUL 2005)

I.30   52.222-12  CONTRACT TERMINATION--DEBARMENT (FEB 1988)

I.31   52.222-13  COMPLIANCE WITH DAVIS-BACON AND RELATED ACT REGULATIONS (FEB 1988)

I.32   52.222-14  DISPUTES CONCERNING LABOR STANDARDS (FEB 1988)

I.33   52.222-15  CERTIFICATION OF ELIGIBILITY (FEB 1988)

I.34   52.222-21  PROHIBITION OF SEGREGATED FACILITIES (FEB 1999)

I.35   52.222-26  EQUAL OPPORTUNITY (MAR 2007)

I.36   52.222-27  AFFIRMATIVE ACTION COMPLIANCE REQUIREMENTS FOR CONSTRUCTION (FEB 1999)

I.37   52.222-35  EQUAL OPPORTUNITY FOR SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS. [SEP 2006]

I.38   52.222-36  AFFIRMATIVE ACTION FOR WORKERS WITH DISABILITIES (JUN 1998)

I.39   52.222-37  EMPLOYMENT REPORTS ON SPECIAL DISABLED VETERANS, VETERANS OF THE VIETNAM ERA, AND OTHER ELIGIBLE VETERANS (SEP 2006)

I.40   52.222-39  NOTIFICATION OF EMPLOYEE RIGHTS CONCERNING PAYMENT OF UNION DUES OR FEES (DEC 2004)

I.41   52.222-50  COMBATING TRAFFICKING IN PERSONS (FEB 2009)

I.42   52.223-3 I  HAZARDOUS MATERIAL IDENTIFICATION AND MATERIAL SAFETY DATA (JAN 1997)-- ALTERNATE I (JUL 1995)

I.43   52.223-5  POLLUTION PREVENTION AND RIGHT-TO-KNOW INFORMATION (AUG 2003)

I.44   52.223-6  DRUG-FREE WORKPLACE (MAY 2001)

I.45   52.223-11  OZONE-DEPLETING SUBSTANCES (MAR 2001)

I.46   52.223-14  TOXIC CHEMICAL RELEASE REPORTING (AUG 2003)

I.47   52.223-15  ENERGY EFFICIENCY IN ENERGY-CONSUMING PRODUCTS (DEC 2007)

I.48   52.225-13  RESTRICTIONS ON CERTAIN FOREIGN PURCHASES (JUN 2008)

I.49   52.227-1  AUTHORIZATION AND CONSENT (DEC 2007)

I.50   52.227-2  NOTICE AND ASSISTANCE REGARDING PATENT AND COPYRIGHT INFRINGEMENT (DEC 2007)

I.51   52.227-4  PATENT INDEMNITY--CONSTRUCTION CONTRACTS (DEC 2007)

AB1330-10-CN-0114

SECTION I
CONTRACT CLAUSES

I.52  52.228-2  ADDITIONAL BOND SECURITY (OCT 1997)

I.53  52.228-5  INSURANCE--WORK ON A GOVERNMENT INSTALLATION (JAN 1997)

I.54  52.228-11  PLEDGES OF ASSETS (SEP 2009)

I.55  52.228-12  PROSPECTIVE SUBCONTRACTOR REQUESTS FOR BONDS (OCT 1995)

I.56  52.228-14  IRREVOCABLE LETTER OF CREDIT (DEC 1999)

I.57  52.229-3  FEDERAL, STATE, AND LOCAL TAXES (APR 2003)

I.58  52.232-5  PAYMENTS UNDER FIXED-PRICE CONSTRUCTION CONTRACTS (SEP 2002)

I.59  52.232-9  LIMITATION ON WITHHOLDING OF PAYMENTS (APR 1984)

I.60  52.232-17  INTEREST (OCT 2008)

I.61  52.232-18  AVAILABILITY OF FUNDS (APR 1984)

I.62  52.232-23  ASSIGNMENT OF CLAIMS (JAN 1986)

I.63  52.232-27  PROMPT PAYMENT FOR CONSTRUCTION CONTRACTS (OCT 2008)

I.64  52.232-33  PAYMENT BY ELECTRONIC FUNDS TRANSFER--CENTRAL CONTRACTOR
REGISTRATION (OCT 2003)

I.65  52.233-1  DISPUTES (JUL 2002)

I.66  52.233-3  PROTEST AFTER AWARD (AUG 1996)

I.67  52.233-4  APPLICABLE LAW FOR BREACH OF CONTRACT CLAIM (OCT 2004)

I.68  52.236-2  DIFFERING SITE CONDITIONS (APR 1984)

I.69  52.236-3  SITE INVESTIGATION AND CONDITIONS AFFECTING THE WORK (APR 1984)

I.70  52.236-5  MATERIAL AND WORKMANSHIP (APR 1984)

I.71  52.236-6  SUPERINTENDENCE BY THE CONTRACTOR (APR 1984)

I.72  52.236-7  PERMITS AND RESPONSIBILITIES (NOV 1991)

I.73  52.236-8  OTHER CONTRACTS (APR 1984)

I.74  52.236-9  PROTECTION OF EXISTING VEGETATION, STRUCTURES, EQUIPMENT,
UTILITIES, AND IMPROVEMENTS (APR 1984)

I.75  52.236-10  OPERATIONS AND STORAGE AREAS (APR 1984)

I.76  52.236-11  USE AND POSSESSION PRIOR TO COMPLETION (APR 1984)

I.77  52.236-12  CLEANING UP (APR 1984)

I.78  52.236-13 I  ACCIDENT PREVENTION (NOV 1991)--ALTERNATE I (NOV 1991)

I.79  52.236-14  AVAILABILITY AND USE OF UTILITY SERVICES (APR 1984)

I.80  52.236-15  SCHEDULES FOR CONSTRUCTION CONTRACTS (APR 1984)

AB1330-10-CN-0114

SECTION I
CONTRACT CLAUSES

I.81  52.236-17  LAYOUT OF WORK (APR 1984)

I.82  52.236-26  PRECONSTRUCTION CONFERENCE (FEB 1995)

I.83  RESERVED

I.84  52.242-13  BANKRUPTCY (JUL 1995)

I.85  52.243-4  CHANGES (JUN 2007)

I.86  52.244-6  SUBCONTRACTS FOR COMMERCIAL ITEMS  (AUG 2009)

I.87  52.246-21  WARRANTY OF CONSTRUCTION (MAR 1994)

I.88  52.248-3  VALUE ENGINEERING--CONSTRUCTION (SEP 2006)

I.89  52.249-2 I  TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE)
(MAY 2004)-- ALTERNATE I (SEP 1996)

I.90  52.249-10  DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984)

I.91  52.252-4  ALTERATIONS IN CONTRACT (APR 1984)

I.92  52.253-1  COMPUTER GENERATED FORMS (JAN 1991)

I.93  52.203-14  DISPLAY OF HOTLINE POSTER(S)  (DEC 2007)

   (a) Definition.
"United States," as used in this clause, means the 50 States, the District of
Columbia, and outlying areas.
   (b) Display of fraud hotline poster(s). Except as provided in paragraph (c)--
      (1) During contract performance in the United States, the Contractor shall
prominently display in common work areas within business segments performing
work under this contract and at contract work sites--
         (i) Any agency fraud hotline poster or Department of Homeland Security
(DHS) fraud hotline poster identified in paragraph (b)(3) of this clause; and
         (ii) Any DHS fraud hotline poster subsequently identified by the
Contracting Officer.
      (2) Additionally, if the Contractor maintains a company website as a method
of providing information to employees, the Contractor shall display an
electronic version of the poster(s) at the website.
   (3) Any required posters may be obtained as follows:
            Poster(s) Obtain from:
            Office of Inspector General
            United States Department of Commerce
            Website:  http://www.oig.doc.gov/oig/
            Click on * Printable Hotline Poster at the bottom of the screen.
   (c) If the Contractor has implemented a business ethics and conduct awareness
program, including a reporting mechanism, such as a hotline poster, then the
Contractor need not display any agency fraud hotline posters as required in
paragraph (b) of this clause, other than any required DHS posters.
   (d) Subcontracts. The Contractor shall include the substance of this clause,
including this paragraph (d), in all subcontracts that exceed $5,000,000, except
when the subcontract--
      (1) Is for the acquisition of a commercial item; or
      (2) Is performed entirely outside the United States.
                        (End of clause)

AB1330-10-CN-0114

SECTION I
CONTRACT CLAUSES

I.94  52.203-15  WHISTLEBLOWER PROTECTIONS UNDER THE AMERICAN RECOVERY AND
REINVESTMENT ACT OF 2009  (MAR 2009)

   (a) The Contractor shall post notice of employees rights and remedies for
whistleblower protections provided under section 1553 of the American Recovery
and Reinvestment Act of 2009 (Pub. L. 111-5).
   (b) The Contractor shall include the substance of this clause including this
paragraph (b) in all subcontracts.
                         (End of clause)

I.95  52.204-9  PERSONAL IDENTITY VERIFICATION OF CONTRACTOR PERSONNEL (SEP
2007)

   (a) The Contractor shall comply with agency personal identity verification
procedures identified in the contract that implement Homeland Security
Presidential Directive-12 (HSPD-12), Office of Management and Budget (OMB)
guidance M-05-24, as amended, and Federal Information Processing Standards
Publication (FIPS PUB) Number 201, as amended.
   (b) The Contractor shall insert this clause in all subcontracts when the
subcontractor is required to have routine physical access to a Federally-
controlled facility and/or routine access to a Federally-controlled information
system.

                         (End of clause)

I.96  52.204-11  AMERICAN RECOVERY AND REINVESTMENT ACT REPORTING REQUIREMENTS
(MAR 2009)

   (a) Definitions. As used in this clause--
   "Contract" as defined in FAR 2.101, means a mutually binding legal
relationship obligating the seller to furnish the supplies or services
(including construction) and the buyer to pay for them. It includes all types of
commitments that obligate the Government to an expenditure of appropriated funds
and that, except as otherwise authorized, are in writing. In addition to
bilateral instruments, contracts include (but are not limited to) awards and
notices of awards; job orders or task letters issued under basic ordering
agreements; letter contracts; orders, such as purchase orders, under which the
contract becomes effective by written acceptance or performance; and bilateral
contract modifications. Contracts do not include grants and cooperative
agreements covered by 31 U.S.C. 6301, et seq. For discussion of various types of
contracts, see FAR Part 16.
   "First-tier subcontract" means a subcontract awarded directly by a Federal
Government prime contractor whose contract is funded by the Recovery Act.
   "Jobs created" means an estimate of those new positions created and filled, or
previously existing unfilled positions that are filled, as a result of funding
by the American Recovery and Reinvestment Act of 2009 (Recovery Act). This
definition covers only prime contractor positions established in the United
States and outlying areas (see definition in FAR 2.101). The number shall be
expressed as "full-time equivalent" (FTE), calculated cumulatively as all hours
worked divided by the total number of hours in a full-time schedule, as defined
by the contractor. For instance, two full-time employees and one part-time
employee working half days would be reported as 2.5 FTE in each calendar
quarter.
   "Jobs retained" means an estimate of those previously existing filled
positions that are retained as a result of funding by the American Recovery and
Reinvestment Act of 2009 (Recovery Act). This definition covers only prime
contractor positions established in the United States and outlying areas (see
definition in FAR 2.101). The number shall be expressed as "full-time
equivalent" (FTE), calculated cumulatively as all hours worked divided by the
total number of hours in a fulltime schedule, as defined by the contractor. For

AB1330-10-CN-0114

SECTION I
CONTRACT CLAUSES

instance, two full-time employees and one part-time employee working half days would be reported as 2.5 FTE in each calendar quarter.

"Total compensation" means the cash and noncash dollar value earned by the executive during the contractor's past fiscal year of the following (for more information see 17 CFR 229.402(c)(2)):

(1) Salary and bonus.

(2) Awards of stock, stock options, and stock appreciation rights. Use the dollar amount recognized for financial statement reporting purposes with respect to the fiscal year in accordance with the Statement of Financial Accounting Standards No. 123 (Revised 2004) (FAS 123R), Shared Based Payments.

(3) Earnings for services under non-equity incentive plans. Does not include group life, health, hospitalization or medical reimbursement plans that do not discriminate in favor of executives, and are available generally to all salaried employees.

(4) Change in pension value. This is the change in present value of defined benefit and actuarial pension plans.

(5) Above-market earnings on deferred compensation which is not tax-qualified.

(6) Other compensation. For example, severance, termination payments, value of life insurance paid on behalf of the employee, perquisites or property if the value for the executive exceeds $10,000.

(b) This contract requires the contractor to provide products and/or services that are funded under the American Recovery and Reinvestment Act of 2009 (Recovery Act). Section 1512(c) of the Recovery Act requires each contractor to report on its use of Recovery Act funds under this contract. These reports will be made available to the public.

(c) Reports from contractors for all work funded, in whole or in part, by the Recovery Act, and for which an invoice is submitted prior to June 30, 2009, are due no later than July 10, 2009. Thereafter, reports shall be submitted no later than the 10th day after the end of each calendar quarter.

(d) The Contractor shall report the following information, using the online reporting tool available at www.FederalReporting.gov.

(1) The Government contract and order number, as applicable.

(2) The amount of Recovery Act funds invoiced by the contractor for the reporting period. A cumulative amount from all the reports submitted for this action will be maintained by the government's on-line reporting tool.

(3) A list of all significant services performed or supplies delivered, including construction, for which the contractor invoiced in this calendar quarter.

(4) Program or project title, if any.

(5) A description of the overall purpose and expected outcomes or results of the contract, including significant deliverables and, if appropriate, associated units of measure.

(6) An assessment of the contractor's progress towards the completion of the overall purpose and expected outcomes or results of the contract (i.e., not started, less than 50 percent completed, completed 50 percent or more, or fully completed). This covers the contract (or portion thereof) funded by the Recovery Act.

(7) A narrative description of the employment impact of work funded by the Recovery Act. This narrative should be cumulative for each calendar quarter and only address the impact on the contractor's workforce. At a minimum, the contractor shall provide--

(i) A brief description of the types of jobs created and jobs retained in the United States and outlying areas (see definition in FAR 2.101). This description may rely on job titles, broader labor categories, or the contractor's existing practice for describing jobs as long as the terms used are widely understood and describe the general nature of the work; and

AB1330-10-CN-0114

Page - 36

SECTION I
CONTRACT CLAUSES

(ii) An estimate of the number of jobs created and jobs retained by the prime contractor, in the United States and outlying areas. A job cannot be reported as both created and retained.

(8) Names and total compensation of each of the five most highly compensated officers of the Contractor for the calendar year in which the contract is awarded if--

(i) In the Contractor's preceding fiscal year, the Contractor received--

(A) 80 percent or more of its annual gross revenues from Federal contracts (and subcontracts), loans, grants (and subgrants) and cooperative agreements; and

(B) $25,000,000 or more in annual gross revenues from Federal contracts (and subcontracts), loans, grants (and subgrants) and cooperative agreements; and

(ii) The public does not have access to information about the compensation of the senior executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986.

(9) For subcontracts valued at less than $25,000 or any subcontracts awarded to an individual, or subcontracts awarded to a subcontractor that in the previous tax year had gross income under $300,000, the Contractor shall only report the aggregate number of such first tier subcontracts awarded in the quarter and their aggregate total dollar amount.

(10) For any first-tier subcontract funded in whole or in part under the Recovery Act, that is over $25,000 and not subject to reporting under paragraph 9, the contractor shall require the subcontractor to provide the information described in (i), (ix), (x), and (xi) below to the contractor for the purposes of the quarterly report. The contractor shall advise the subcontractor that the information will be made available to the public as required by section 1512 of the Recovery Act. The contractor shall provide detailed information on these first-tier subcontracts as follows:

(i) Unique identifier (DUNS Number) for the subcontractor receiving the award and for the subcontractor's parent company, if the subcontractor has a parent company.

(ii) Name of the subcontractor.

(iii) Amount of the subcontract award.

(iv) Date of the subcontract award.

(v) The applicable North American Industry Classification System (NAICS) code.

(vi) Funding agency.

(vii) A description of the products or services (including construction) being provided under the subcontract, including the overall purpose and expected outcomes or results of the subcontract.

(viii) Subcontract number (the contract number assigned by the prime contractor).

(ix) Subcontractor's physical address including street address, city, state, and country. Also include the nine-digit zip code and congressional district if applicable.

(x) Subcontract primary performance location including street address, city, state, and country. Also include the nine-digit zip code and congressional district if applicable.

(xi) Names and total compensation of each of the subcontractor's five most highly compensated officers, for the calendar year in which the subcontract is awarded if--

(A) In the subcontractor's preceding fiscal year, the subcontractor received--

(1) 80 percent or more of its annual gross revenues in Federal contracts (and subcontracts), loans, grants (and subgrants), and cooperative agreements; and

AB1330-10-CN-0114

SECTION I
CONTRACT CLAUSES

(2) $25,000,000 or more in annual gross revenues from Federal
contracts (and subcontracts), loans, grants (and subgrants), and cooperative
agreements; and
(B) The public does not have access to information about the
compensation of the senior executives through periodic reports filed under
section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a),
78o(d)) or section 6104 of the Internal Revenue Code of 1986.
(End of clause)

I.97  52.217-7  OPTION FOR INCREASED QUANTITY--SEPARATELY PRICED LINE ITEM (MAR
1989)

The Government may require the delivery of the numbered line item, identified
in the Schedule as an option item, in the quantity and at the price stated in
the Schedule. The Contracting Officer may exercise the option by written notice
to the Contractor within 210 calendar days after contract award.  Delivery of
added items shall continue at the same rate that like items are called for under
the contract, unless the parties otherwise agree.
(End of Clause)

I.98  52.219-9 II  SMALL BUSINESS SUBCONTRACTING PLAN (APR 2008)--ALTERNATE II
(OCT 2001)

(a) This clause does not apply to small business concerns.
(b) Definitions. As used in this clause--
"Alaska Native Corporation (ANC)" means any Regional Corporation, Village
Corporation, Urban Corporation, or Group Corporation organized under the laws of
the State of Alaska in accordance with the Alaska Native Claims Settlement Act,
as amended (43 U.S.C. 1601, et seq.) and which is considered a minority and
economically disadvantaged concern under the criteria at 43 U.S.C. 1626(e)(1).
This definition also includes ANC direct and indirect subsidiary corporations,
joint ventures, and partnerships that meet the requirements of 43 U.S.C.
1626(e)(2).
"Commercial item" means a product or service that satisfies the definition of
commercial item in section 2.101 of the Federal Acquisition Regulation.
"Commercial plan" means a subcontracting plan (including goals) that covers
the offeror's fiscal year and that applies to the entire production of
commercial items sold by either the entire company or a portion thereof (e.g.,
division, plant, or product line).
"Electronic Subcontracting Reporting System (eSRS)" means the Governmentwide,
electronic, web-based system for small business subcontracting program
reporting. The eSRS is located at http://www.esrs.gov.
"Indian tribe" means any Indian tribe, band, group, pueblo, or community,
including native villages and native groups (including corporations organized by
Kenai, Juneau, Sitka, and Kodiak) as defined in the Alaska Native Claims
Settlement Act (43 U.S.C.A. 1601 et seq.), that is recognized by the Federal
Government as eligible for services from the Bureau of Indian Affairs in
accordance with 25 U.S.C. 1452(c). This definition also includes Indian-owned
economic enterprises that meet the requirements of 25 U.S.C. 1452(e).
"Individual contract plan" means a subcontracting plan that covers the entire
contract period (including option periods), applies to a specific contract, and
has goals that are based on the offeror's planned subcontracting in support of
the specific contract, except that indirect costs incurred for common or joint
purposes may be allocated on a prorated basis to the contract.
"Master plan" means a subcontracting plan that contains all the required
elements of an individual contract plan, except goals, and may be incorporated
into individual contract plans, provided the master plan has been approved.
"Subcontract" means any agreement (other than one involving an employer-
employee relationship) entered into by a Federal Government prime Contractor or

AB1330-10-CN-0114

SECTION I
CONTRACT CLAUSES

subcontractor calling for supplies or services required for performance of the contract or subcontract.

(c) Proposals submitted in response to this solicitation shall include a subcontracting plan that separately addresses subcontracting with small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, and women-owned small business concerns. If the offeror is submitting an individual contract plan, the plan must separately address subcontracting with small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, and women-owned small business concerns, with a separate part for the basic contract and separate parts for each option (if any). The plan shall be included in and made a part of the resultant contract. The subcontracting plan shall be negotiated within the time specified by the Contracting Officer. Failure to submit and negotiate a subcontracting plan shall make the offeror ineligible for award of a contract.

(d) The offeror's subcontracting plan shall include the following:

(1) Goals, expressed in terms of percentages of total planned subcontracting dollars, for the use of small business, veteran-owned small business, service-disabled veteranowned small business, HUBZone small business, small disadvantaged business, and women-owned small business concerns as subcontractors. The offeror shall include all subcontracts that contribute to contract performance, and may include a proportionate share of products and services that are normally allocated as indirect costs. In accordance with 43 U.S.C. 1626:

(i) Subcontracts awarded to an ANC or Indian tribe shall be counted towards the subcontracting goals for small business and small disadvantaged business (SDB) concerns, regardless of the size or Small Business Administration certification status of the ANC or Indian tribe.

(ii) Where one or more subcontractors are in the subcontract tier between the prime contractor and the ANC or Indian tribe, the ANC or Indian tribe shall designate the appropriate contractor(s) to count the subcontract towards its small business and small disadvantaged business subcontracting goals.

(A) In most cases, the appropriate Contractor is the Contractor that awarded the subcontract to the ANC or Indian tribe.

(B) If the ANC or Indian tribe designates more than one Contractor to count the subcontract toward its goals, the ANC or Indian tribe shall designate only a portion of the total subcontract award to each Contractor. The sum of the amounts designated to various Contractors cannot exceed the total value of the subcontract.

(C) The ANC or Indian tribe shall give a copy of the written designation to the Contracting Officer, the prime Contractor, and the subcontractors in between the prime Contractor and the ANC or Indian tribe within 30 days of the date of the subcontract award.

(D) If the Contracting Officer does not receive a copy of the ANC's or the Indian tribe's written designation within 30 days of the subcontract award, the Contractor that awarded the subcontract to the ANC or Indian tribe will be considered the designated Contractor.

(2) A statement of--

(i) Total dollars planned to be subcontracted for an individual contract plan; or the offeror's total projected sales, expressed in dollars, and the total value of projected subcontracts to support the sales for a commercial plan;

(ii) Total dollars planned to be subcontracted to small business concerns (including ANC and Indian tribes);

(iii) Total dollars planned to be subcontracted to veteran-owned small business concerns;

(iv) Total dollars planned to be subcontracted to service-disabled veteran-owned small business;

AB1330-10-CN-0114

SECTION I
CONTRACT CLAUSES

(v) Total dollars planned to be subcontracted to HUBZone small business concerns;
(vi) Total dollars planned to be subcontracted to small disadvantaged business concerns (including ANC and Indian tribes); and
(vii) Total dollars planned to be subcontracted to women-owned small business concerns.
(3) A description of the principal types of supplies and services to be subcontracted, and an identification of the types planned for subcontracting to-
(i) Small business concerns;
(ii) Veteran-owned small business concerns;
(iii) Service-disabled veteran-owned small business concerns;
(iv) HUBZone small business concerns;
(v) Small disadvantaged business concerns; and
(vi) Women-owned small business concerns.
(4) A description of the method used to develop the subcontracting goals in paragraph (d)(1) of this clause.
(5) A description of the method used to identify potential sources for solicitation purposes (e.g., existing company source lists, the Central Contractor Registration database (CCR), veterans service organizations, the National Minority Purchasing Council Vendor Information Service, the Research and Information Division of the Minority Business Development Agency in the Department of Commerce, or small, HUBZone, small disadvantaged, and women-owned small business trade associations). A firm may rely on the information contained in CCR as an accurate representation of a concern's size and ownership characteristics for the purposes of maintaining a small, veteran-owned small, service-disabled veteran- owned small, HUBZone small, small disadvantaged, and women-owned small business source list. Use of CCR as its source list does not relieve a firm of its responsibilities (e.g., outreach, assistance, counseling, or publicizing subcontracting opportunities) in this clause.
(6) A statement as to whether or not the offeror included indirect costs in establishing subcontracting goals, and a description of the method used to determine the proportionate share of indirect costs to be incurred with--
(i) Small business concerns (including ANC and Indian tribes);
(ii) Veteran-owned small business concerns;
(iii) Service-disabled veteran-owned small business concerns;
(iv) HUBZone small business concerns;
(v) Small disadvantaged business concerns (including ANC and Indian tribes); and
(vi) Women-owned small business concerns.
(7) The name of the individual employed by the offeror who will administer the offeror's subcontracting program, and a description of the duties of the individual.
(8) A description of the efforts the offeror will make to assure that small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, and women-owned small business concerns have an equitable opportunity to compete for subcontracts.
(9) Assurances that the offeror will include the clause of this contract entitled "Utilization of Small Business Concerns" in all subcontracts that offer further subcontracting opportunities, and that the offeror will require all subcontractors (except small business concerns) that receive subcontracts in excess of $550,000 ($1,000,000 for construction of any public facility with further subcontracting possibilities) to adopt a subcontracting plan that complies with the requirements of this clause.
(10) Assurances that the offeror will--
(i) Cooperate in any studies or surveys as may be required;
(ii) Submit periodic reports so that the Government can determine the extent of compliance by the offeror with the subcontracting plan;

AB1330-10-CN-0114

SECTION I
CONTRACT CLAUSES

(iii) Submit the Individual Subcontract Report (ISR) and/or the Summary Subcontract Report (SSR), in accordance with paragraph (l) of this clause using the Electronic Subcontracting Reporting System (eSRS) at http://www.esrs.gov. The reports shall provide information on subcontract awards to small business concerns, veteran-owned small business concerns, service-disabled veteran-owned small business concerns, HUBZone small business concerns, small disadvantaged business concerns, women-owned small business concerns, and Historically Black Colleges and Universities and Minority Institutions. Reporting shall be in accordance with this clause, or as provided in agency regulations;

(iv) Ensure that its subcontractors with subcontracting plans agree to submit the ISR and/or the SSR using eSRS;

(v) Provide its prime contract number, its DUNS number, and the e-mail address of the Government or Contractor official responsible for acknowledging or rejecting the reports, to all first-tier subcontractors with subcontracting plans so they can enter this information into the eSRS when submitting their reports; and

(vi) Require that each subcontractor with a subcontracting plan provide the prime contract number, its own DUNS number, and the e-mail address of the Government or Contractor official responsible for acknowledging or rejecting the reports, to its subcontractors with subcontracting plans.

(11) A description of the types of records that will be maintained concerning procedures that have been adopted to comply with the requirements and goals in the plan, including establishing source lists; and a description of the offeror's efforts to locate small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, and women-owned small business concerns and award subcontracts to them. The records shall include at least the following (on a plant-wide or company-wide basis, unless otherwise indicated):

(i) Source lists (e.g., CCR), guides, and other data that identify small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, and women-owned small business concerns.

(ii) Organizations contacted in an attempt to locate sources that are small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, or women-owned small business concerns.

(iii) Records on each subcontract solicitation resulting in an award of more than $100,000, indicating--

(A) Whether small business concerns were solicited and, if not, why not;

(B) Whether veteran-owned small business concerns were solicited and, if not, why not;

(C) Whether service-disabled veteran-owned small business concerns were solicited and, if not, why not;

(D) Whether HUBZone small business concerns were solicited and, if not, why not;

(E) Whether small disadvantaged business concerns were solicited and, if not, why not;

(F) Whether women-owned small business concerns were solicited and, if not, why not; and

(G) If applicable, the reason award was not made to a small business concern.

(iv) Records of any outreach efforts to contact--

(A) Trade associations;

(B) Business development organizations;

(C) Conferences and trade fairs to locate small, HUBZone small, small disadvantaged, and women-owned small business sources; and

(D) Veterans service organizations.

(v) Records of internal guidance and encouragement provided to buyers through--

AB1330-10-CN-0114

Page - 41

SECTION I
CONTRACT CLAUSES

(A) Workshops, seminars, training, etc.; and
(B) Monitoring performance to evaluate compliance with the program's requirements.
(vi) On a contract-by-contract basis, records to support award data submitted by the offeror to the Government, including the name, address, and business size of each subcontractor. Contractors having commercial plans need not comply with this requirement.
(e) In order to effectively implement this plan to the extent consistent with efficient contract performance, the Contractor shall perform the following functions:
(1) Assist small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, and women-owned small business concerns by arranging solicitations, time for the preparation of bids, quantities, specifications, and delivery schedules so as to facilitate the participation by such concerns. Where the Contractor's lists of potential small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, and women-owned small business subcontractors are excessively long, reasonable effort shall be made to give all such small business concerns an opportunity to compete over a period of time.
(2) Provide adequate and timely consideration of the potentialities of small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, and women-owned small business concerns in all "make-or-buy" decisions.
(3) Counsel and discuss subcontracting opportunities with representatives of small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, and women-owned small business firms.
(4) Confirm that a subcontractor representing itself as a HUBZone small business concern is identified as a certified HUBZone small business concern by accessing the Central Contractor Registration (CCR) database or by contacting SBA.
(5) Provide notice to subcontractors concerning penalties and remedies for misrepresentations of business status as small, veteran-owned small business, HUBZone small, small disadvantaged, or women-owned small business for the purpose of obtaining a subcontract that is to be included as part or all of a goal contained in the Contractor's subcontracting plan.
(f) A master plan on a plant or division-wide basis that contains all the elements required by paragraph (d) of this clause, except goals, may be incorporated by reference as a part of the subcontracting plan required of the offeror by this clause; provided--
(1) The master plan has been approved;
(2) The offeror ensures that the master plan is updated as necessary and provides copies of the approved master plan, including evidence of its approval, to the Contracting Officer; and
(3) Goals and any deviations from the master plan deemed necessary by the Contracting Officer to satisfy the requirements of this contract are set forth in the individual subcontracting plan.
(g) A commercial plan is the preferred type of subcontracting plan for contractors furnishing commercial items. The commercial plan shall relate to the offeror's planned subcontracting generally, for both commercial and Government business, rather than solely to the Government contract. Once the Contractor's commercial plan has been approved, the Government will not require another subcontracting plan from the same Contractor while the plan remains in effect, as long as the product or service being provided by the Contractor continues to meet the definition of a commercial item. A Contractor with a commercial plan shall comply with the reporting requirements stated in paragraph (d)(10) of this clause by submitting one SSR in eSRS for all contracts covered by its commercial plan. This report shall be acknowledged or rejected in eSRS by the Contracting

AB1330-10-CN-0114

SECTION I
CONTRACT CLAUSES

Officer who approved the plan. This report shall be submitted within 30 days
after the end of the Government's fiscal year.

(h) Prior compliance of the offeror with other such subcontracting plans under
previous contracts will be considered by the Contracting Officer in determining
the responsibility of the offeror for award of the contract.

(i) A contract may have no more than one plan. When a modification meets the
criteria in 19.702 for a plan, or an option is exercised, the goals associated
with the modification or option shall be added to those in the existing
subcontract plan.

(j) Subcontracting plans are not required from subcontractors when the prime
contract contains the clause at 52.212-5, Contract Terms and Conditions Required
to Implement Statutes or Executive Orders--Commercial Items, or when the
subcontractor provides a commercial item subject to the clause at 52.244-6,
Subcontracts for Commercial Items, under a prime contract.

(k) The failure of the Contractor or subcontractor to comply in good faith
with--

(1) The clause of this contract entitled "Utilization Of Small Business
Concerns;" or

(2) An approved plan required by this clause, shall be a material breach of
the contract.

(l) The Contractor shall submit ISRs and SSRs using the web- based eSRS at
http://www.esrs.gov. Purchases from a corporation, company, or subdivision that
is an affiliate of the prime Contractor or subcontractor are not included in
these reports. Subcontract award data reported by prime Contractors and
subcontractors shall be limited to awards made to their immediate next-tier
subcontractors. Credit cannot be taken for awards made to lower tier
subcontractors, unless the Contractor or subcontractor has been designated to
receive a small business or small disadvantaged business credit from an ANC or
Indian tribe.

(1) ISR. This report is not required for commercial plans. The report is
required for each contract containing an individual subcontract plan, and shall
be submitted to the Administrative Contracting Officer (ACO) or Contracting
Officer, if no ACO is assigned.

(i) The report shall be submitted semi-annually during contract
performance for the periods ending March 31 and September 30. A report is also
required for each contract within 30 days of contract completion. Reports are
due 30 days after the close of each reporting period, unless otherwise directed
by the Contracting Officer. Reports are required when due, regardless of whether
there has been any subcontracting activity since the inception of the contract
or the previous reporting period.

(ii) When a subcontracting plan contains separate goals for the basic
contract and each option, as prescribed by FAR 19.704(c), the dollar goal
inserted on this report shall be the sum of the base period through the current
option; for example, for a report submitted after the second option is
exercised, the dollar goal would be the sum of the goals for the basic contract,
the first option, and the second option.

(iii) The authority to acknowledge receipt or reject the ISR resides--

(A) In the case of the prime Contractor, with the Contracting Officer;
and

(B) In the case of a subcontract with a subcontracting plan, with the
entity that awarded the subcontract.

(2) SSR.

(i) Reports submitted under individual contract plans--

(A) This report encompasses all subcontracting under prime contracts and
subcontracts with the awarding agency, regardless of the dollar value of the
subcontracts.

(B) The report may be submitted on a corporate, company or subdivision
(e.g. plant or division operating as a separate profit center) basis, unless
otherwise directed by the agency.

AB1330-10-CN-0114

SECTION I
CONTRACT CLAUSES

(C) If a prime Contractor and/or subcontractor is performing work for more than one executive agency, a separate report shall be submitted to each executive agency covering only that agency's contracts, provided at least one of that agency's contracts is over $550,000 (over $1,000,000 for construction of a public facility) and contains a subcontracting plan. For DoD, a consolidated report shall be submitted for all contracts awarded by military departments/agencies and/or subcontracts awarded by DoD prime Contractors. However, for construction and related maintenance and repair, a separate report shall be submitted for each DoD component.

(D) For DoD and NASA, the report shall be submitted semi- annually for the six months ending March 31 and the twelve months ending September 30. For civilian agencies, except NASA, it shall be submitted annually for the twelve month period ending September 30. Reports are due 30 days after the close of each reporting period.

(E) Subcontract awards that are related to work for more than one executive agency shall be appropriately allocated.

(F) The authority to acknowledge or reject SSRs in eSRS, including SSRs submitted by subcontractors with subcontracting plans, resides with the Government agency awarding the prime contracts.

(ii) Reports submitted under a commercial plan--

(A) The report shall include all subcontract awards under the commercial plan in effect during the Government's fiscal year.

(B) The report shall be submitted annually, within thirty day s after the end of the Government's fiscal year.

(C) If a Contractor has a commercial plan and is performing work for more than one executive agency, the Contractor shall specify the percentage of dollars attributable to each agency from which contracts for commercial items were received.

(D) The authority to acknowledge or reject SSRs for commercial plans resides with the Contracting Officer who approved the commercial plan.

(iii) All reports submitted at the close of each fiscal year (both individual and commercial plans) shall include a Year-End Supplementary Report for Small Disadvantaged Businesses. The report shall include subcontract awards, in whole dollars, to small disadvantaged business concerns by North American Industry Classification System (NAICS) Industry Subsector. If the data are not available when the year-end SSR is submitted, the prime Contractor and/or subcontractor shall submit the Year-End Supplementary Report for Small Disadvantaged Businesses within 90 days of submitting the year-end SSR. For a commercial plan, the Contractor may obtain from each of its subcontractors a predominant NAICS Industry Subsector and report all awards to that subcontractor under its predominant NAICS Industry Subsector.

(End of Clause)

I.99   52.219-28 – POST-AWARD SMALL BUSINESS PROGRAM REREPRESENTATION (APR 2009)

(a) *Definitions.* As used in this clause--

*Long-term contract* means a contract of more than five years in duration, including options. However, the term does not include contracts that exceed five years in duration because the period of performance has been extended for a cumulative period not to exceed six months under the clause at 52.217-8, Option to Extend Services, or other appropriate authority.

*Small business concern* means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the criteria in 13 CFR part 121 and the size standard in paragraph (c) of this clause. Such a concern is "not dominant in its field of operation" when it does not exercise a controlling or major influence on a national basis in a kind

SECTION I
CONTRACT CLAUSES

of business activity in which a number of business concerns are primarily engaged. In determining whether dominance exists, consideration shall be given to all appropriate factors, including volume of business, number of employees, financial resources, competitive status or position, ownership or control of materials, processes, patents, license agreements, facilities, sales territory, and nature of business activity.

(b) If the Contractor represented that it was a small business concern prior to award of this contract, the Contractor shall rerepresent its size status according to paragraph (e) of this clause or, if applicable, paragraph (g) of this clause, upon the occurrence of any of the following:

   (1) Within 30 days after execution of a novation agreement or within 30 days after modification of the contract to include this clause, if the novation agreement was executed prior to inclusion of this clause in the contract.

   (2) Within 30 days after a merger or acquisition that does not require a novation or within 30 days after modification of the contract to include this clause, if the merger or acquisition occurred prior to inclusion of this clause in the contract.

   (3) For long-term contracts—

      (i) Within 60 to 120 days prior to the end of the fifth year of the contract; and

      (ii) Within 60 to 120 days prior to the date specified in the contract for exercising any option thereafter.

(c) The Contractor shall rerepresent its size status in accordance with the size standard in effect at the time of this rerepresentation that corresponds to the North American Industry Classification System (NAICS) code assigned to this contract. The small business size standard corresponding to this NAICS code can be found at http://www.sba.gov/services/contractingopportunities/sizestandardstopics/ .

(d) The small business size standard for a Contractor providing a product which it does not manufacture itself, for a contract other than a construction or service contract, is 500 employees.

(e) Except as provided in paragraph (g) of this clause, the Contractor shall make the rerepresentation required by paragraph (b) of this clause by validating or updating all its representations in the Online Representations and Certifications Application and its data in the Central Contractor Registration, as necessary, to ensure they reflect the Contractor's current status. The Contractor shall notify the contracting officer in writing within the timeframes specified in paragraph (b) of this clause that the data have been validated or updated, and provide the date of the validation or update.

(f) If the Contractor represented that it was other than a small business concern prior to award of this contract, the Contractor may, but is not required to, take the actions required by paragraphs (e) or (g) of this clause.

(g) If the Contractor does not have representations and certifications in ORCA, or does not have a representation in ORCA for the NAICS code applicable to this contract, the Contractor is required to complete the following rerepresentation and submit it to the contracting office, along with the contract number and the date on which the rerepresentation was completed:

AB1330-10-CN-0114

Page - 45

SECTION I
CONTRACT CLAUSES

The Contractor represents that it [ ] is, [ ] is not a small business concern under NAICS Code _____ assigned to contract number _____.[Contractor to sign and date and insert authorized signer's name and title].

(End of clause)

I.100  52.222-54  EMPLOYMENT ELIGIBILITY VERIFICATION (JAN 2009)

(a) Definitions. As used in this clause--
"Commercially available off-the-shelf (COTS) item"--
    (1) Means any item of supply that is--
        (i) A commercial item (as defined in paragraph (1) of the definition at 2.101);
        (ii) Sold in substantial quantities in the commercial marketplace; and
        (iii) Offered to the Government, without modification, in the same form in which it is sold in the commercial marketplace; and
    (2) Does not include bulk cargo, as defined in section 3 of the Shipping Act of 1984 (46 U.S.C. App. 1702), such as agricultural products and petroleum products. Per 46 CFR 525.1 (c)(2), "bulk cargo" means cargo that is loaded and carried in bulk onboard ship without mark or count, in a loose unpackaged form, having homogenous characteristics. Bulk cargo loaded into intermodal equipment, except LASH or Seabee barges, is subject to mark and count and, therefore, ceases to be bulk cargo.
"Employee assigned to the contract" means an employee who was hired after November 6, 1986, who is directly performing work, in the United States, under a contract that is required to include the clause prescribed at 22.1803. An employee is not considered to be directly performing work under a contract if the employee--
    (1) Normally performs support work, such as indirect or overhead functions; and
    (2) Does not perform any substantial duties applicable to the contract.
"Subcontract" means any contract, as defined in 2.101, entered into by a subcontractor to furnish supplies or services for performance of a prime contract or a subcontract. It includes but is not limited to purchase orders, and changes and modifications to purchase orders.
"Subcontractor" means any supplier, distributor, vendor, or firm that furnishes supplies or services to or for a prime Contractor or another subcontractor.
"United States", as defined in 8 U.S.C. 1101(a)(38), means the 50 States, the District of Columbia, Puerto Rico, Guam, and the U.S. Virgin Islands.
(b) Enrollment and verification requirements.
    (1) If the Contractor is not enrolled as a Federal Contractor in E-Verify at time of contract award, the Contractor shall--
        (i) Enroll. Enroll as a Federal Contractor in the EVerify program within 30 calendar days of contract award;
        (ii) Verify all new employees. Within 90 calendar days of enrollment in the E-Verify program, begin to use EVerify to initiate verification of employment eligibility of all new hires of the Contractor, who are working in the United States, whether or not assigned to the contract, within 3 business days after the date of hire (but see paragraph (b)(3) of this section); and
        (iii) Verify employees assigned to the contract. For each employee assigned to the contract, initiate verification within 90 calendar days after date of enrollment or within 30 calendar days of the employee's assignment to the contract, whichever date is later (but see paragraph (b)(4) of this section).
    (2) If the Contractor is enrolled as a Federal Contractor in E-Verify at time of contract award, the Contractor shall use E-Verify to initiate verification of employment eligibility of--

AB1330-10-CN-0114

SECTION I
CONTRACT CLAUSES

(i) All new employees.

(A) Enrolled 90 calendar days or more. The Contractor shall initiate verification of all new hires of the Contractor, who are working in the United States, whether or not assigned to the contract, within 3 business days after the date of hire (but see paragraph (b)(3) of this section); or

(B) Enrolled less than 90 calendar days. Within 90 calendar days after enrollment as a Federal Contractor in E-Verify, the Contractor shall initiate verification of all new hires of the Contractor, who are working in the United States, whether or not assigned to the contract, within 3 business days after the date of hire (but see paragraph (b)(3) of this section); or

(ii) Employees assigned to the contract. For each employee assigned to the contract, the Contractor shall initiate verification within 90 calendar days after date of contract award or within 30 days after assignment to the contract, whichever date is later (but see paragraph (b)(4) of this section).

(3) If the Contractor is an institution of higher education (as defined at 20 U.S.C. 1001(a)); a State or local government or the government of a Federally recognized Indian tribe; or a surety performing under a takeover agreement entered into with a Federal agency pursuant to a performance bond, the Contractor may choose to verify only employees assigned to the contract, whether existing employees or new hires. The Contractor shall follow the applicable verification requirements at (b)(1) or (b)(2) respectively, except that any requirement for verification of new employees applies only to new employees assigned to the contract.

(4) Option to verify employment eligibility of all employees. The Contractor may elect to verify all existing employees hired after November 6, 1986, rather than just those employees assigned to the contract. The Contractor shall initiate verification for each existing employee working in the United States who was hired after November 6, 1986, within 180 calendar days of--

(i) Enrollment in the E-Verify program; or

(ii) Notification to E-Verify Operations of the Contractor's decision to exercise this option, using the contact information provided in the E-Verify program Memorandum of Understanding (MOU).

(5) The Contractor shall comply, for the period of performance of this contract, with the requirements of the E-Verify program MOU.

(i) The Department of Homeland Security (DHS) or the Social Security Administration (SSA) may terminate the Contractor's MOU and deny access to the E-Verify system in accordance with the terms of the MOU. In such case, the Contractor will be referred to a suspension or debarment official.

(ii) During the period between termination of the MOU and a decision by the suspension or debarment official whether to suspend or debar, the Contractor is excused from its obligations under paragraph (b) of this clause. If the suspension or debarment official determines not to suspend or debar the Contractor, then the Contractor must reenroll in EVerify.

(c) Web site. Information on registration for and use of the E-Verify program can be obtained via the Internet at the Department of Homeland Security Web site: http://www.dhs.gov/E-Verify.

(d) Individuals previously verified. The Contractor is not required by this clause to perform additional employment verification using E-Verify for any employee--

(1) Whose employment eligibility was previously verified by the Contractor through the E-Verify program;

(2) Who has been granted and holds an active U.S. Government security clearance for access to confidential, secret, or top secret information in accordance with the National Industrial Security Program Operating Manual; or

(3) Who has undergone a completed background investigation and been issued credentials pursuant to Homeland Security Presidential Directive (HSPD)-12, Policy for a Common Identification Standard for Federal Employees and Contractors.

AB1330-10-CN-0114

SECTION I
CONTRACT CLAUSES

(e) Subcontracts. The Contractor shall include the requirements of this clause, including this paragraph (e) (appropriately modified for identification of the parties), in each subcontract that--
(1) Is for--
(i) Commercial or noncommercial services (except for commercial services that are part of the purchase of a COTS item (or an item that would be a COTS item, but for minor modifications), performed by the COTS provider, and are normally provided for that COTS item); or
(ii) Construction;
(2) Has a value of more than $3,000; and
(3) Includes work performed in the United States.
(End of clause)

I.101  52.225-21  REQUIRED USE OF AMERICAN IRON, STEEL, AND MANUFACTURED GOODS-BUY AMERICAN ACT-CONSTRUCTION MATERIALS (MAR 2009)

(a) Definitions. As used in this clause--
"Construction material" means an article, material, or supply brought to the construction site by the Contractor or a subcontractor for incorporation into the building or work. The term also includes an item brought to the site preassembled from articles, materials, or supplies. However, emergency life safety systems, such as emergency lighting, fire alarm, and audio evacuation systems, that are discrete systems incorporated into a public building or work and that are produced as complete systems, are evaluated as a single and distinct construction material regardless of when or how the individual parts or components of those systems are delivered to the construction site. Materials purchased directly by the Government are supplies, not construction material.
"Domestic construction material" means--
(1) An unmanufactured construction material mined or produced in the United States; or
(2) A construction material manufactured in the United States.
"Foreign construction material" means a construction material other than a domestic construction material.
"Manufactured construction material" means any construction material that is not unmanufactured construction material.
"Steel" means an alloy that includes at least 50 percent iron, between .02 and 2 percent carbon, and may include other elements.
"United States" means the 50 States, the District of Columbia, and outlying areas.
"Unmanufactured construction material" means raw material brought to the construction site for incorporation into the building or work that has not been-
-
(1) Processed into a specific form and shape; or
(2) Combined with other raw material to create a material that has different properties than the properties of the individual raw materials.
(b) Domestic preference.
(1) This clause implements--
(i) Section 1605 of the American Recovery and Reinvestment Act of 2009 (Recovery Act) (Pub. L. 111-5), by requiring, unless an exception applies, that all iron, steel, and other manufactured goods used as construction material in the project are produced in the United States; and
(ii) The Buy American Act (41 U.S.C. 10a - 10d) by providing a preference for unmanufactured domestic construction material.
(2) The Contractor shall use only domestic construction material in performing this contract, except as provided in paragraph (b)(3) and (b)(4) of this clause.
(3) This requirement does not apply to the construction material or components listed by the Government as follows: <u>NONE</u>

AB1330-10-CN-0114

SECTION I
CONTRACT CLAUSES

(4) The Contracting Officer may add other foreign construction material to the list in paragraph (b)(3) of this clause if the Government determines that--
(i) The cost of domestic construction material would be unreasonable.
(A) The cost of domestic iron, steel, or other manufactured goods used as construction material is unreasonable when the cumulative cost of such material will increase the cost of the contract by more than 25 percent;
(B) The cost of unmanufactured construction material is unreasonable when the cost of such material exceeds the cost of foreign material by more than 6 percent;
(ii) The construction material is not mined, produced, or manufactured in the United States in sufficient and reasonably available quantities and of a satisfactory quality; or
(iii) The application of the restriction of section 1605 of the Recovery Act or the Buy American Act to a particular construction material would be inconsistent with the public interest.
(c) Request for determination of inapplicability of Section 1605 of the Recovery Act or the Buy American Act
(1)
(i) Any Contractor request to use foreign construction material in accordance with paragraph (b)(4) of this clause shall include adequate information for Government evaluation of the request, including--
(A) A description of the foreign and domestic construction materials;
(B) Unit of measure;
(C) Quantity;
(D) Cost;
(E) Time of delivery or availability;
(F) Location of the construction project;
(G) Name and address of the proposed supplier; and
(H) A detailed justification of the reason for use of foreign construction materials cited in accordance with paragraph (b)(4) of this clause.
(ii) A request based on unreasonable cost shall include a reasonable survey of the market and a completed cost comparison table in the format in paragraph (d) of this clause.
(iii) The cost of construction material shall include all delivery costs to the construction site and any applicable duty.
(iv) Any Contractor request for a determination submitted after contract award shall explain why the Contractor could not reasonably foresee the need for such determination and could not have requested the determination before contract award. If the Contractor does not submit a satisfactory explanation, the Contracting Officer need not make a determination.
(2) If the Government determines after contract award that an exception to section 1605 of the Recovery Act or the Buy American Act applies and the Contracting Officer and the Contractor negotiate adequate consideration, the Contracting Officer will modify the contract to allow use of the foreign construction material. However, when the basis for the exception is the unreasonable cost of a domestic construction material, adequate consideration is not less than the differential established in paragraph (b)(4)(i) of this clause.
(3) Unless the Government determines that an exception to section 1605 of the Recovery Act or the Buy American Act applies, use of foreign construction material is noncompliant with section 1605 of the American Recovery and Reinvestment Act or the Buy American Act.
(d) Data. To permit evaluation of requests under paragraph (c) of this clause based on unreasonable cost, the Contractor shall include the following information and any applicable supporting data based on the survey of suppliers:

Foreign and Domestic Construction Materials Cost Comparison

| Construction Material Description | Unit of Measure | Quantity | Cost (Dollars)+ |
|---|---|---|---|
| Item 1: | | | |

AB1330-10-CN-0114

SECTION I
CONTRACT CLAUSES

| | | | |
|---|---|---|---|
| Foreign construction material | _____ | _____ | _____ |
| Domestic construction material | _____ | _____ | _____ |
| Item 2: | | | |
| Foreign construction material | _____ | _____ | _____ |
| Domestic construction material | _____ | _____ | _____ |

   +Include all delivery costs to the construction site.

_____
_____

(End of clause)

I.102  52.228-15  PERFORMANCE AND PAYMENT BONDS--CONSTRUCTION (NOV 2006)

   (a) "Definitions." As used in this clause--
"Original contract price" means the award price of the contract; or, for
requirements contracts, the price payable for the estimated total quantity; or,
for indefinite-quantity contracts, the price payable for the specified minimum
quantity. Original contract price does not include the price of any options,
except those options exercised at the time of contract award.
   (b) "Amount of required bonds." Unless the resulting contract price is
$100,000 or less, the successful offeror shall furnish performance and payment
bonds to the Contracting Officer as follows:
   (1) "Performance bonds (Standard Form 25)." The penal amount of performance
bonds at the time of contract award shall be 100 percent of the original
contract price.
   (2) "Payment Bonds (Standard Form 25-A)." The penal amount of payment bonds
at the time of contract award shall be 100 percent of the original contract
price.
   (3) "Additional bond protection."
      (i) The Government may require additional performance and payment bond
protection if the contract price is increased. The increase in protection
generally will equal 100 percent of the increase in contract price.
      (ii) The Government may secure the additional protection by directing the
Contractor to increase the penal amount of the existing bond or to obtain an
additional bond.
   (c) "Furnishing executed bonds." The Contractor shall furnish all executed
bonds, including any necessary reinsurance agreements, to the Contracting
Officer, within the time period specified in the Bid Guarantee, Provision L.13,
of the solicitation, or otherwise specified by the Contracting Officer, but in
any event, before starting work.
   (d) Surety or other security for bonds. The bonds shall be in the form of firm
commitment, supported by corporate sureties whose names appear on the list
contained in Treasury Department Circular 570, individual sureties, or by other
acceptable security such as postal money order, certified check, cashier's
check, irrevocable letter of credit, or, in accordance with Treasury Department
regulations, certain bonds or notes of the United States. Treasury Circular 570
is published in the Federal Register or may be obtained from the:
      U.S. Department of Treasury
      Financial Management Service
      Surety Bond Branch
      3700 East West Highway, Room 6F01
      Hyattsville, MD 20782.
      Or via the internet at http://www.fms.treas.gov/c570/.
   (e) "Notice of subcontractor waiver of protection (40 U.S.C. 3133(c)." Any
waiver of the right to sue on the payment bond is void unless it is in writing,

AB1330-10-CN-0114

SECTION I
CONTRACT CLAUSES

signed by the person whose right is waived, and executed after such person has
first furnished labor or material for use in the performance of the contract.
(End of Clause)

I.103  52.236-1  PERFORMANCE OF WORK BY THE CONTRACTOR (APR 1984)

The Contractor shall perform on the site, and with its own organization, work
equivalent to at least 25 percent of the total amount of work to be performed
under the contract. This percentage may be  reduced by a supplemental agreement
to this contract if, during performing  the work, the Contractor requests a
reduction and the Contracting Officer  determines that the reduction would be to
the advantage of the Government.
(End of Clause)

I.104  52.236-21 I  SPECIFICATIONS AND DRAWINGS FOR CONSTRUCTION (FEB 1997)--
ALTERNATE I (APR 1984)

(a) The Contractor shall keep on the work site a copy of the drawings and
specifications and shall at all times give the Contracting Officer access
thereto. Anything mentioned in the specifications and not shown on the drawings,
or shown on the drawings and not mentioned in the specifications, shall be of
like effect as if shown or mentioned in both. In case of difference between
drawings and specifications, the specifications shall govern. In case of
discrepancy in the figures, in the drawings, or in the specifications, the
matter shall be promptly submitted to the Contracting Officer, who shall
promptly make a determination in writing. Any adjustment by the Contractor
without such a determination shall be at its own risk and expense. The
Contracting Officer shall furnish from time to time such detailed drawings and
other information as considered necessary, unless otherwise provided.
(b) Wherever in the specifications or upon the drawings the words "directed",
"required", "ordered", "designated", "prescribed", or words of like import are
used, it shall be understood that the "direction", "requirement", "order",
"designation", or "prescription", of the Contracting Officer is intended and
similarly the words "approved", "acceptable", "satisfactory", or words of like
import shall mean "approved by," or "acceptable to", or "satisfactory to" the
Contracting Officer, unless otherwise expressly stated.
(c) Where "as shown," "as indicated", "as detailed", or words of similar
import are used, it shall be understood that the reference is made to the
drawings accompanying this contract unless stated otherwise. The word "provided"
as used herein shall be understood to mean "provide complete in place," that is
"furnished and installed".
(d) Shop drawings means drawings, submitted to the Government by the
Contractor, subcontractor, or any lower tier subcontractor pursuant to a
construction contract, showing in detail
(1) the proposed fabrication and assembly of structural elements, and
(2) the installation (i.e., fit, and attachment details) of materials or
equipment. It includes drawings, diagrams, layouts, schematics, descriptive
literature, illustrations, schedules, performance and test data, and similar
materials furnished by the contractor to explain in detail specific portions of
the work required by the contract. The Government may duplicate, use, and
disclose in any manner and for any purpose shop drawings delivered under this
contract.
(e) If this contract requires shop drawings, the Contractor shall coordinate
all such drawings, and review them for accuracy, completeness, and compliance
with contract requirements and shall indicate its approval thereon as evidence
of such coordination and review. Shop drawings submitted to the Contracting
Officer without evidence of the Contractor's approval may be returned for
resubmission. The Contracting Officer will indicate an approval or disapproval
of the shop drawings and if not approved as submitted shall indicate the

AB1330-10-CN-0114

SECTION I
CONTRACT CLAUSES

Government's reasons therefor. Any work done before such approval shall be at the Contractor's risk. Approval by the Contracting Officer shall not relieve the Contractor from responsibility for any errors or omissions in such drawings, nor from responsibility for complying with the requirements of this contract, except with respect to variations described and approved in accordance with (f) of this clause.

(f) If shop drawings show variations from the contract requirements, the Contractor shall describe such variations in writing, separate from the drawings, at the time of submission. If the Contracting Officer approves any such variation, the Contracting Officer shall issue an appropriate contract modification, except that, if the variation is minor or does not involve a change in price or in time of performance, a modification need not be issued.

(g) The Contractor shall submit to the Contracting Officer for approval four copies (unless otherwise indicated) of all shop drawings as called for under the various headings of these specifications. Three sets (unless otherwise indicated) of all shop drawings, will be retained by the Contracting Officer and one set will be returned to the Contractor. Upon completing the work under this contract, the Contractor shall furnish a complete set of all shop drawings as finally approved. These drawings shall show all changes and revisions made up to the time the equipment is completed and accepted.

(End of Clause)

**I.105  ADDITIONAL CONTRACT CLAUSES**

The following clauses are incorporated by reference per FAR 52.252-2, Clauses Incorporated by Reference, and shall apply in addition to the contract clauses noted above, to all items associated with providing all labor, materials, equipment, necessary to install the Enhanced Furniture, Fixtures, and Equipment (FF&E), Option Item 0006 of the Schedule, if exercised.

| | | |
|---|---|---|
| 52.222-19 | Child Labor—Cooperation with Authorities and Remedies (Aug 2009) | |
| 52.246-2 | Inspection of Supplies -- Fixed-Price (Aug 1996) | |
| 52.246-16 | Responsibility for Supplies (Apr 1984) | |

(End of Clause)

SECTION J
LIST OF ATTACHMENTS

J.1    LIST OF DOCUMENTS, FORMS, AND OTHER ATTACHMENTS THAT ARE HEREBY MADE A PART
       OF THIS SOLICITATION AND ANY RESULTANT CONTRACT.

       **J.1.1** – Technical Specifications, for the NOAA La Jolla Laboratory
       Replacement Project– La Jolla, CA, dated October 9, 2009, consisting of two
       (2) volumes.

       **J.1.2** – Drawings, for the NOAA La Jolla Laboratory Replacement Project– La
       Jolla, CA, dated October 9, 2009, consisting of three (3) volumes.

       **J.1.3** – Department of Labor Wage Decision CA080001 CA1 dated 10/30/09,
       Revision 35, for California, Statewide, Building, Heavy (Heavy and
       Dredging), Highway and Residential for San Diego County, consisting of 26
       pages.

J.2    LIST OF FORMS REQUIRED FOR USE AND SUBMISSION UNDER THIS SOLICITATION OR
       RESULTING CONTRACT.

       **J.2.1** – The following forms are for informational purposes only and can be
       downloaded for printing at GSA's Forms Library at http://www.arnet.gov/far

                        Standard Form (SF) 24, Bid Bond
                        Standard Form (SF) 25, Performance Bond
                        Standard Form (SF) 25A, Payment Bond

       J.2.2 –    **Subcontracting Plan Outline,** for use as a model in the
                  submission of Subcontracting plans by large businesses.

       J.2.3 –    **Past Performance Form Questionnaire**

SECTION K
REPRESENTATIONS, CERTIFICATIONS AND
OTHER STATEMENTS OF OFFERORS

K.1   52.204-8   ANNUAL REPRESENTATIONS AND CERTIFICATIONS (FEB 2009)

(a)
(1) The North American Industry Classification System (NAICS) code for this acquisition is 236220
(2) The small business size standard is $33.5 Million
(3) The small business size standard for a concern which submits an offer in its own name, other than on a construction or service contract, but which proposes to furnish a product which it did not itself manufacture, is 500 employees.
(b)
(1) If the clause at 52.204-7, Central Contractor Registration, is included in this solicitation, paragraph (d) of this provision applies.
(2) If the clause at 52.204-7 is not included in this solicitation, and the offeror is currently registered in CCR, and has completed the ORCA electronically, the offeror may choose to use paragraph (d) of this provision instead of completing the corresponding individual representations and certifications in the solicitation. The offeror shall indicate which option applies by checking one of the following boxes:
/_/ (i) Paragraph (d) applies.
/_/ (ii) Paragraph (d) does not apply and the offeror has completed the individual representations and certifications in the solicitation.
(c)
(1) The following representations or certifications in ORCA are applicable to this solicitation as indicated:
(i) 52.203-2, Certificate of Independent Price Determination.  This provision applies to solicitations when a firm-fixed-price contract or fixed-price contract with economic price adjustment is contemplated, unless--
(A) The acquisition is to be made under the simplified acquisition procedures in Part 13;
(B) The solicitation is a request for technical proposals under two-step sealed bidding procedures; or
(C) The solicitation is for utility services for which rates are set by law or regulation.
(ii) 52.203-11, Certification and Disclosure Regarding Payments to Influence Certain Federal Transactions. This provision applies to solicitations expected to exceed $100,000.
(iii) 52.204-3, Taxpayer Identification. This provision applies to solicitations that do not include the clause at 52.204-7, Central Contractor Registration.
(iv) 52.204-5, Women-Owned Business (Other Than Small Business). This provision applies to solicitations that--
(A) Are not set aside for small business concerns;
(B) Exceed the simplified acquisition threshold; and
(C) Are for contracts that will be performed in the United States or its outlying areas.
(v) 52.209-5, Certification Regarding Responsibility Matters. This provision applies to solicitations where the contract value is expected to exceed the simplified acquisition threshold.
(vi) 52.214-14, Place of Performance-Sealed Bidding. This provision applies to invitations for bids except those in which the place of performance is specified by the Government.
(vii) 52.215-6, Place of Performance. This provision applies to solicitations unless the place of performance is specified by the Government.
(viii) 52.219-1, Small Business Program Representations (Basic & Alternate I). This provision applies to solicitations when the contract will be performed in the United States or its outlying areas.

AB1330-10-CN-0114

Page - 54



SECTION K
REPRESENTATIONS, CERTIFICATIONS AND
OTHER STATEMENTS OF OFFERORS

(A) The basic provision applies when the solicitations are issued by other than DoD, NASA, and the Coast Guard.

(B) The provision with its Alternate I applies to solicitations issued by DoD, NASA, or the Coast Guard.

(ix) 52.219-2, Equal Low Bids. This provision applies to solicitations when contracting by sealed bidding and the contract will be performed in the United States or its outlying areas.

(x) 52.222-22, Previous Contracts and Compliance Reports. This provision applies to solicitations that include the clause at 52.222-26, Equal Opportunity.

(xi) 52.222-25, Affirmative Action Compliance. This provision applies to solicitations, other than those for construction, when the solicitation includes the clause at 52.222-26, Equal Opportunity.

(xii) 52.222-38, Compliance with Veterans' Employment Reporting Requirements. This provision applies to solicitations when it is anticipated the contract award will exceed the simplified acquisition threshold and the contract is not for acquisition of commercial items.

(xiii) 52.223-1, Biobased Product Certification. This provision applies to solicitations that require the delivery or specify the use of USDA-designated items; or include the clause at 52.223-2, Affirmative Procurement of Biobased Products Under Service and Construction Contracts.

(xiv) 52.223-4, Recovered Material Certification. This provision applies to solicitations that are for, or specify the use of, EPA-designated items.

(xv) 52.225-2, Buy American Act Certificate. This provision applies to solicitations containing the clause at 52.225-1.

(xvi) 52.225-4, Buy American Act-Free Trade Agreements-Israeli Trade Act Certificate. (Basic, Alternate I, and Alternate II) This provision applies to solicitations containing the clause at 52.225-3.

(A) If the acquisition value is less than $25,000, the basic provision applies.

(B) If the acquisition value is $25,000 or more but is less than $50,000, the provision with its Alternate I applies.

(C) If the acquisition value is $50,000 or more but is less than $67,826, the provision with its Alternate II applies.

(xvii) 52.225-6, Trade Agreements Certificate. This provision applies to solicitations containing the clause at 52.225-5.

(xviii) 52.225-20, Prohibition on Conducting Restricted Business Operations in Sudan-Certification.

(xix) 52.226-2, Historically Black College or University and Minority Institution Representation. This provision applies to--

(A) Solicitations for research, studies, supplies, or services of the type normally acquired from higher educational institutions; and

(B) For DoD, NASA, and Coast Guard acquisitions, solicitations that contain the clause at 52.219-23, Notice of Price Evaluation Adjustment for Small Disadvantaged Business Concerns.

(2) The following certifications are applicable as indicated by the Contracting Officer:

_____ (i) 52.219-19, Small Business Concern Representation for the Small Business Competitiveness Demonstration Program.

_____ (ii) 52.219-21, Small Business Size Representation for Targeted Industry Categories Under the Small Business Competitiveness Demonstration Program.

_____ (iii) 52.219-22, Small Disadvantaged Business Status.

_____ (A) Basic.

_____ (B) Alternate I.

_____ (iv) 52.222-18, Certification Regarding Knowledge of Child Labor for Listed End Products.

_____ (v) 52.222-48, Exemption from Application of the Service

AB1330-10-RP-0005

**SECTION K**
**REPRESENTATIONS, CERTIFICATIONS AND**
**OTHER STATEMENTS OF OFFERORS**

Contract Act to Contracts for Maintenance, Calibration, or
Repair of Certain Equipment Certification.
_____ (vi) 52.222-22 Exemption from Application of the Service
Contract Act to Contracts for Certain Services-Certification.
_____ (vii) 52.223-9, with its Alternate I, Estimate of Percentage of
Recovered Material Content for EPA-Designated Products
(Alternate I only).
____X____ (viii) 52.223-13, Certification of Toxic Chemical Release
Reporting.
_____ (ix) 52.227-6, Royalty Information.
_____ (A) Basic.
_____ (B) Alternate I.
_____ (x) 52.227-15, Representation of Limited Rights Data and
Restricted Computer Software.

(d) The offeror has completed the annual representations and certifications
electronically via the Online Representations and Certifications Application
(ORCA) website at http://orca.bpn.gov. After reviewing the ORCA database
information, the offeror verifies by submission of the offer that the
representations and certifications currently posted electronically that apply to
this solicitation as indicated in paragraph (c) of this provision have been
entered or updated within the last 12 months, are current, accurate, complete,
and applicable to this solicitation (including the business size standard
applicable to the NAICS code referenced for this solicitation), as of the date
of this offer and are incorporated in this offer by reference (see FAR 4.1201);
except for the changes identified below [offeror to insert changes, identifying
change by clause number, title, date]. These amended representation(s) and/or
certification(s) are also incorporated in this offer and are current, accurate,
and complete as of the date of this offer.

| FAR Clause # | Title | Date | Change |
|---|---|---|---|
| | | | |
| | | | |

Any changes provided by the offeror are applicable to this solicitation only,
and do not result in an update to the representations and certifications posted
on ORCA.

(End of Provision)

K.2  WAIVER OF EVALUATION ADJUSTMENT (HUBZONE CONCERNS)

(This section is only applicable to HUBZone concerns.)

As stated in FAR 52.219-4, Notice of Price Evaluation Adjustment for HUBZone
Small Business Concerns (refer to Clause I.11), a firm which represents itself
as a HUBZone small business concern may elect to waive the adjustment, in which
case the factor will be added to its offer for evaluation purposes.

NOTE: The agreements in paragraph (d) of FAR 52.219-4, do **not** apply to offers
that waive the adjustment.

_____ OFFEROR ELECTS TO WAIVE THE ADJUSTMENT

AB1330-10-RP-0005

Page - 56

SECTION K
REPRESENTATIONS, CERTIFICATIONS AND
OTHER STATEMENTS OF OFFERORS

**K.3   TELEFAX NUMBER**

The offeror shall insert the facsimile number applicable to the Contractor's address shown on the solicitation form.

FAX No.:   (858) 259-8282

**K.4   E-MAIL ADDRESS**

The offeror shall provide an e-mail address applicable to the Contractor's primary contact point for this solicitation.

E-MAIL ADDRESS:   rene_olivo@rsconst.com

**K.5   DATA UNIVERSAL NUMBERING SYSTEM (DUNS)**

A Dun and Bradstreet (DUNS) number is required for award of a resulting contract.  The offeror shall insert their Dun and Bradstreet (DUNS) number.
DUNS No.: 002845360

**K.6   CENTRAL CONTRACTOR REGISTRATION (CCR)**

The offeror represents as part of its offer that it /X/ has,  /_ / has not registered on the Central Contractor's Database.  (See FAR 52.204-7)

CAGE Code: 58Z15

**K.7   TAXPAYER IDENTIFICATION NUMBER (TIN)**

The offeror shall provide the firm's TIN for this solicitation.

TIN:   94-1507-451

**K.8   OFFEROR'S CERTIFICATION**

The Representations and Certifications must be executed by an individual authorized to legally bind the offering firm.  The offeror's signature represents that the above Representations and Certifications are made as part of this proposal.

Rudolph and Sletten, Inc.                    AB1330-10-RP-0005
Name of Offeror (Printed)                      Solicitation Number

Rene Olivo
Offeror's Signature
Rene Olivo, Vice President of Operations

AB1330-10-RP-0005

Exhibit B

# NOAA Southwest Fisheries Science Center Replacement Headquarters and Laboratory Second Contract Disputes Act Claim

### by Rudolph & Sletten



NOAA Southwest Fisheries Science Center

Replacement Headquarters and Laboratory

La Jolla, California

October 30, 2013





NOAA Southwest Fisheries Scie____ Center Replacement
Headquarters and Laboratory Second Contract Disputes Act Claim

October 30, 2013

## Certification[1]

October 30, 2013

CLAIM CERTIFICATION

I, Martin Sisemore, am the President of Rudolph & Sletten. I certify that this claim by Rudolph &
Sletten in the amount of $2,600,861 is made in good faith; that the supporting data is accurate
and complete to the best of my knowledge and belief; that the amount requested accurately
reflects the contract adjustment for which Rudolph & Sletten believes Government is liable;
and that I am duly authorized to certify the claim on behalf of Rudolph & Sletten. Rudolph &
Sletten requests a determination by the contracting officer within 60 days.

Dated: October 30, 2013      By:      _Martin Sisemore_

Martin Sisemore
President

---

[1] Certifications and Verifications by Subcontractors are contained in Volume II of this Second CDA Claim

ii

NOAA Southwest Fisheries Scie   . Center Replacement
Headquarters and Laboratory Second Contract Disputes Act Claim

October 30, 2013

## Table of Contents

I.    Introduction ..................................................................................................1

II.   Further Unresolved Extra Work ...................................................................2

III.  Additional Delay Related Costs ...................................................................6

   a.   Wrongfully Withheld Retention and Liquidated Damages ................. 6

   b.   Builders Risk Insurance.......................................................................... 8

   c.   Extended General Conditions After June 26, 2013 ............................. 8

IV.  Conclusion .................................................................................................10

Appendix A. CDA Claim Master Exhibit List ...............................................11

iii

## I.      Introduction

On August 23, 2013, the United States Department of Commerce, National Oceanic and Atmospheric Administration ("Government") received Rudolph and Sletten's ("R&S") Contract Dispute Act Claim ("First CDA Claim"). The First CDA Claim was for a compensable Contract time extension of 295 calendar days to substantial completion and another 286 calendar days of delay incurred between substantial completion and the date that final completion should have been recognized. Additionally, R&S requested compensation in the amount of $7,539,269 for extra work undertaken by R&S and its subcontractors, $1,256,244 for consultant costs and $18,013,490 for additional time related costs and other impact costs incurred through June 26, 2013, due to Government-caused delay.

Government has not "accepted" the Project, but has occupied the buildings since 2012 and used but not maintained the buildings. The lack of maintenance, and damage related to Government's occupancy, has caused a large number of call backs and additional work.

This Second Contract Disputes Act Claim ("Second CDA Claim") includes requests for; (1) delay-related costs and; (2) unresolved Requests for Contract Modifications (RCMs) not included in the First CDA Claim. This Second CDA Claim also seeks reimbursement for costs associated with hiring consultants at Government's request to conduct both an acoustic and vibration study and a test of the Technology Tank waterproofing as part of the contract administration. Many of the costs included in this Second CDA Claim were incurred by R&S and its subcontractors after June 26, 2013, the dated established in the First CDA Claim when final acceptance should have occurred.

The unresolved RCMs included in this Second CDA Claim total $909,327 and further demonstrate that R&S' work was severely impacted by; (1) Government's failure to properly administrate the Project; (2) Government's latently defective design and; (3) untimely responses to Requests for Information and/or direction and issuance of modifications to correct the design defects and to implement other changes.

Four additional delay-related impacts are described in detail herein and total $1,691,534. The first of these delay-related impacts is for Government's wrongful withholding of retention and liquidated damages due to alleged unsatisfactory progress. Second, R&S incurred costs for Builders Risk Insurance after the original contract completion date. Finally, R&S continued to experience costs for extended general conditions after June 26, 2013, due to Government malfeasance in administering the contract.

R&S hereby submits this Second CDA Claim for a total of $2,600,861. R&S hereby reserves all rights and remedies to submit and to recover from Government any additional costs incurred but not cited in this Second CDA Claim nor in R&S' First CDA Claim. Additionally, R&S expressly

NOAA Southwest Fisheries Sci  ... Center Replacement
Headquarters and Laboratory Second Contract Disputes Act Claim                              October 30, 2013

incorporates the claim narrative in the First CDA Claim into this Second CDA Claim by reference.
R&S also reserves its right to seek interest on the claims as allowed by law.

## II.     Further Unresolved Extra Work

The First CDA Claim was received by Government on August 23, 2013. In that claim, R&S
submitted RCMs relating to over 550 Potential Change Order proposals (PCOs) submitted by
R&S during the performance of the Contract scope of work. Many of these are not yet resolved.
Included in this Second CDA Claim are RCMs for PCOs that were not included in the First CDA
Claim and which are either:

1. Pending PCOs - PCOs submitted to Government for which no formal response, or
   Contract Modification, has been received to date.
2. Rejected PCOs - PCOs rejected by Government in full. Reasons for rejections have
   included, but are not limited to, disputes over the scope of the added or changed work
   performed or to be performed and over the cause of the extra or changed work.
3. Not Previously Submitted PCOs – PCOs which have not previously been submitted to
   Government for their consideration, usually due to the lateness of the change directed
   by Government.

In this Second CDA Claim, some of the RCMs submitted in the First CDA Claim have been
revised. The exhibits to this claim include both the RCMs as originally submitted and the revised
RCMs. The exhibits are labeled by PCO number, not RCM number. The following table lists the
PCOs by group and provides for each the amount requested.

| PCO | RCM | Description | Total Value Requested | RCM Amount |
|---|---|---|---|---|
| | | **RCMs for Pending PCOs** | | |
| 8452 | 10/1/2013 | Add 60 x 36 Modulating Damper at AHU-5 | 3,200 | 3,200 |
| 8626 | 10/23/2013 | Add Email Alarms for Tech Tank Systems through BMS | 4,777 | 4,777 |
| 8701 | 10/1/2013 | Additional Landscaping Maintenance Costs Waiting for RFI 1481 Response | 7,763 | 7,763 |
| 8714 | 10/10/2013 | Replace Damaged Hepa Filter | 1,636 | 1,636 |
| 8732 | 10/10/2013 | Revise Seawater Piping at Building Entrance | 11,493 | 11,493 |
| 8743 | 10/1/2013 | Replace Existing Faucet Hand Controls with Foot Controls in the Necropsy Room | 2,373 | 2,373 |
| 8745 | 10/1/2013 | Add Ball Valve for N Courtyard Landscaping | 1,078 | 1,078 |
| 8747 | 10/10/2013 | Warranty Repairs due to Lack of Maintenance on the Mechanical Systems | 21,310 | 21,310 |
| 8749 | 10/10/2013 | Additional Building Cleaning Requested by NOAA | 6,078 | 6,078 |
| 8751 | 10/23/2013 | Maintenance of SP-1 | 1,448 | 1,448 |
| 8758 | 10/10/2013 | Add Ball Valve and Vent for Each Tank in the Aquaria | 5,098 | 5,098 |

| PCO | RCM | Description | Total Value Requested | RCM Amount |
|---|---|---|---|---|
| 8759 | 10/10/2013 | Recalibrate Flodar | 761 | 761 |
| 8762 | 10/23/2013 | PCS Disruption and Delay Impacts | 218,138 | 218,138 |
| 8763 | 10/1/2013 | Liebert Troubleshooting and Service Requests for CRAC Units | 3,279 | 3,279 |
| 8765 | 10/23/2013 | Extended Green Roof Maintenance while Waiting for RFI 1553 Response | 18,028 | 18,028 |
| 8766 | 10/23/2013 | JFM Additional Drywall and Framing Repairs due to Design Issues | 17,807 | 17,807 |
| 8768 | 10/1/2013 | Replacing Damaged Boiler Controls and Added Surge Protection | 2,570 | 2,570 |
| 8770 | 10/23/2013 | Misc. Reinforcing Steel Changes | 29,711 | 29,711 |
| 8771 | 10/23/2013 | Additional Cost Associated with Structural Reinforcing Changes | 6,787 | 6,787 |
| 8774 | 10/1/2013 | Electrical Rough-Ins for Card Readers Later Deleted | 1,195 | 1,195 |
| 8776 | 10/1/2013 | Re-Coordination of the Ceiling Space Above the Necropsy Room | 767 | 767 |
| 8778 | 10/1/2013 | Replace Two 20amp Receptacles with Two 30amp Receptacles | 201 | 201 |
| 8783 | 10/10/2013 | Revised J-box Locations for FA Strobes and Copy Cam | 726 | 726 |
| 8785 | 10/1/2013 | Additional UPS System Training for SWFSC Staff | 1,685 | 1,685 |
| 8787 | 10/1/2013 | Extend Camera Circuit to New Location | 496 | 496 |
| 8790 | 10/1/2013 | Delay and Disruption Costs Attributed to Design Issues and the Length of Time Required to get Answers to RFI's | 51,269 | 51,269 |
| **Total for RCM's for Pending PCO's** | | | **$419,674** | **$419,674** |
| **RCM's for Rejected PCO's** | | | | |
| 8004 | 10/1/2013 | Tech Tank Delta Truss Connection | 42,606 | 42,606 |
| 8089 | 10/10/2013 | Added Reinforcing and Block-Outs @ Beam and Slab Connections to Perimeter Architectural Walls | 50,205 | 50,205 |
| 8144 | 10/1/2013 | Hard Wired Duress Buttons in Offices | 3,002 | 3,002 |
| 8476 | 10/1/2013 | Increased Feeder & Breaker Size for Larger Pumps Required to Meet Performance Standards | 1,646 | 1,646 |
| 8739 | 10/1/2013 | Hydro-Seed North Slope of Site | 9,465 | 9,465 |
| 8750 | 10/10/2013 | Unsuitable Green Roof Plant Replacement | 31,089 | 31,089 |
| 8755 | 10/10/2013 | Roller Shades at Rooms 378, 379, 380, 381, and 382 | 3,162 | 3,162 |
| **Total for RCM's for Rejected PCO's** | | | **$141,175** | **$141,175** |
| **RCM's for PCO's Not Previously Submitted** | | | | |
| 8738 | 10/10/2013 | Rework at Door Headers for Mag Lock Installation | 6,223 | 6,223 |
| 8767 | 10/24/2013 | General Conditions Impacts due to Phased Possession of the Facility | 224,957 | 224,957 |
| 8772 | 10/15/2013 | BOGE Compressor and Controller Repair | 2,325 | 2,325 |
| 8773 | 10/24/2013 | Improper callback warranty claim on Tech Tank Life Support Equipment | 12,179 | 12,179 |
| 8777 | 10/10/2013 | Additional Labor to Assist NOAA with the Filling and Draining Process of the Tech | 3,499 | 3,499 |

NOAA Southwest Fisheries Sci   e Center Replacement
Headquarters and Laboratory Second Contract Disputes Act Claim

October 30, 2013

| PCO | RCM | Description | Total Value Requested | RCM Amount |
|---|---|---|---|---|
| | | Tank | | |
| 8791 | 10/23/2013 | Bond Removed from Approved PCO's | 63,866 | 63,866 |
| 8792 | 10/23/2013 | Additional Costs Incurred by Paramount Fire in the Performance of their Scope of Work | 37,661 | 37,661 |
| 8793 | 10/24/2013 | Otis Elevator costs of relocating heat detector and revising elevator door detail | 29,385 | 29,385 |
| 8795 | 10/10/2013 | Liquidated Damages | 1,180,000 | 1,180,000 |
| 8796 | 10/10/2013 | Acoustic Vibration Study | 50,609 | 50,609 |
| 8797 | 10/10/2013 | Tech Tank Waterproofing Consultant | 139,621 | 139,621 |
| 8798 | 10/10/2013 | Additional Door Hardware Pursuant to RFCP 212 | 2,052 | 2,052 |
| 8799 | 10/28/2013 | Extended Builders Risk Insurance Cost | 242,740 | 242,740 |
| 8800 | 10/10/2013 | Certified Air | 1,058 | 1,058 |
| 8801 | 10/23/2013 | Unpaid Retention Wrongly Withheld from Progress Payment | 43,837 | 43,837 |
| Total for RCM's for PCO's Not Previously Submitted | | | $2,040,012 | $2,040,012 |
| Grand Total for all RCM's | | | $2,600,861 | $2,600,861 |

As illustrated in the table above, the Unresolved RCMs in this Second CDA Claim total $2,600,861. This amount is in addition to the $7,539,269 that was submitted in the First CDA Claim. Four of the PCO's, PCO's 8767, 8795, 8799, 8801, are for delay-related damages that are explained in the next section, Section III.  Without these four PCO's, the Unresolved RCM's total to $909,327.

Certain of the Unresolved RCMs relate to defects in design or administration of the Technology Tank ("Tech Tank") or the systems connected to the Tech Tank. The Tech Tank was one of the last areas accepted on the Project. Because of the RCMs' relation to R&S' delay related claims, a brief description of the causes of the RCMs are set forth herein:

- **PCO 8732 – Revise Seawater Piping at Building Entrance**

  On 12/22/11, Government issued RFCP-159 modifying the seawater piping that enters the building and goes to the Tech Tank. Along with RFCP-159, plumbing drawings were issued which showed a re-route for the seawater return line. Consequently, this RFCP conflicted with the civil drawings seawater routing. Field modifications were performed in order to mitigate these conflicts in the contract drawings. On 1/15/13, Government informed R&S that the seawater pipes were not installed correctly and that a deficiency noticed would be issued. R&S responded with a formal letter describing the conflict in Government's drawings and the proactive measures that R&S took to correct the situation.

There were a number of design and permitting problems associated with the seawater piping, including but not limited to ; (1) failure of Government to secure an agreement with UCSD regarding the use of their pipe and; (2) lack of design of a flow meter, which was required and this issue affected the route of seawater piping.

- **PCO 8772 – BOGE Compressor and Controller Repair**

On 5/21/13, Government requested additional work be performed for the repair of both BOGE compressors and their controllers. These compressors are for the seawater equipment of the Tech Tank. This additional work continued to prolong Government's acceptance of the Tech Tank.

- **PCO 8796 – Acoustic Vibration Consultant**

This PCO seeks payment for the acoustic and vibration study on the Tech Tank.  The study was necessary to respond to Government's questions regarding whether or not the Tech Tank, as constructed, would cause unnecessary and unacceptable vibration. There was no contract requirement for an acoustic and vibration study on the Tech Tank. However, in furtherance of the contract administration and to respond to Government's request, R&S hired a consultant to provide a report. The study concluded that Government's concerns about R&S' workmanship were unfounded.  In fact, certain Government attributable design flaws with the structure of the Tech Tank were identified.  A copy of that report was given to Government. Government requested further analysis by the consultant, which was performed and the results provided.

- **PCO 8797 – Tech Tank Waterproofing Consultant**

After completion of the Tech Tank, the tank was filled and sat for months without any problems. When the temperature was dramatically changed, the Tech Tank exhibited some seepage at a control joint. Government issued a notice of non-compliance and requested the contractor provide information and requested a report explaining the circumstances involved in the seepage. In furtherance of the contract administration, R&S retained a consultant to review the cause of the seepage and prepare a report. The consultant determined that the Tech Tank was constructed in substantial conformance with the contract documents.

- **PCO 8798 – Additional Door Hardware Pursuant to RFCP 212**

On 11/5/12, Government transmitted RFCP-212 requesting additional work for door hardware to meet operational performance desired by Government. These doors are located at the Tech Tank lab and required various trips to the jobsite,

troubleshooting and the addition of a different relay board to allow the hardware to function per Government's request.

- **PCO 8777 – Additional Labor to Assist Government with the Filling and Draining Process of the Tech Tank**

This PCO was for assisting Government with filling and emptying the Tech Tank, which was requested by Government on 1/5/13. On 1/30/13, A.O. Reed & Co. began assisting Government with valve manipulation for the process of filling and emptying the Tech Tank. Not only was this additional costs incurred by R&S' subcontractors but it also further delayed Government's acceptance of this area due to the interference caused by their filling and emptying operations. A.O. Reed & Co. assisted Government on 1/30/13, 2/7/13, 2/8/13, 2/15/13, 2/21/13, and 3/5/13.

- **PCO 8773 – Tech Tank Maintenance Required due to Phased Possession of the Facility**

Substantial completion was on 9/13/12; however, for the reasons described here and in the related RCMs, Government refused to take possession of the Tech Tank and routine maintenance on equipment was not performed. Government ultimately issued a conditional acceptance of certain areas of the Tech Tank including the life support equipment on 8/21/13. From 9/13/12 through 8/21/13, R&S incurred costs for the maintenance work provided on the Barrett Pumps such as replacement of bearings, coupling inserts, and re-lubrication. Timely acceptance of this area would have avoided such additional maintenance costs.

Further explanations of these PCOs are set forth in the narratives and chronologies of the RCMs included as exhibits to this Second CDA Claim. In addition, since some of these RCMs arose before June 26, 2013, further explanation is also contained in the First CDA Claim and is incorporated herein by this reference. These explanations demonstrate how Government's own changes and defects caused the delayed acceptance of the Tech Tank.

## III.   Additional Delay Related Costs

### a.  Wrongfully Withheld Retention and Liquidated Damages

R&S seeks recovery of unpaid retention in the amount of $43,837 and recovery of assessed liquidated damages in the amount of $1,180,000 as well as interest under the Prompt Payment Act, 31 U.S.C. §§3901-3907 ("PPA").

On December 2, 2010, Government wrote R&S and stated that it was going to begin withholding retention of 10 percent of the amount of all payment requests because R&S allegedly was working at the Project outside the stated time periods without prior approval. Government relies on FAR section 52.232-5(e) which states, "...if satisfactory progress has not been made, the Contracting Officer may retain a maximum of 10 percent of the amount of the payment until satisfactory progress is achieved." Government's reliance on 52.232-5(e) to withhold retention is unavailing. In essence, Government shoe-horned a complaint that R&S was allegedly on the site 15 minutes before the start of the work day into a complaint about the progress on the Project to justify withholding retention. Working outside the "stated time periods" has no relation to the satisfactory or unsatisfactory progress of the project. Pursuant to the PPA, R&S is entitled to PPA interest on all amounts wrongly withheld from progress payments beginning in December 2, 2010.

Additionally, on February 11, 2011, Government wrote R&S and stated that it was withholding a maximum of 10 percent of the amount of payment requests under FAR §§52.232-5(e) due to a (21) calendar day progress slippage reflected in the January 17, 2011 master construction project schedule update. However, as described fully in the First CDA Claim, Government was responsible for 21 days of delay to the contract completion date as of the January 2011 schedule update. Government refused to recognize its responsibility for the delay. There was no basis for withholding retention for unsatisfactory progress as of February 11, 2011, nor at any time thereafter, as Government continued to delay completion of the project and fails to recognize any entitlement to extra time. Had Government administered the project in good faith, R&S would have been granted additional time to complete the project and no basis for withholding for unsatisfactory progress would exist. R&S is entitled to PPA interest on withheld amounts as of February 11, 2011 for alleged unsatisfactory progress.

Finally, on November 22, 2011, Government notified Rudolph and Sletten ("R&S") that liquidated damages (LDs) would be assessed from November 24, 2011, until Project completion, in accordance with Section F.2. of the Contract, FAR 52.211-12, Liquidated Damages – Construction.

In Section IV of the First CDA claim, R&S described its repeated notification to Government that Government was causing delay and R&S requested time extensions for the delay, including notifications prior to November 2011. Despite R&S' requests, Government did not grant a single day of time extension.[2]

---

[2] In Section VI of the First CDA Claim, R&S set forth its time impact analysis that demonstrates Government's responsibility for the 295 days of delay to substantial completion.

NOAA Southwest Fisheries Sci    Center Replacement
Headquarters and Laboratory Second Contract Disputes Act Claim                    October 30, 2013

In short, there is no basis for Government to withhold retention for unsatisfactory progress or liquidated damages. Payment is due to R&S in the total amount of $1,180,000 withheld as alleged liquidated damages and retention. R&S reserves the right to seek interest on both the amount currently withheld and the amounts withheld but subsequently released.

### b.   Builders Risk Insurance

As described in the First CDA Claim, Government caused 295 days of delay to the Project's substantial completion, from November 23, 2011 to September 13, 2012. As also explained in Section VI of the First CDA Claim, Government caused 286 days of delay after substantial completion until June 26, 2013, the date R&S believes Government should have accepted the Project.[3] The 286 days of delay described in detail in Section VI.B.12 of the First CDA Claim.

Due to Government-caused delays to substantial completion and acceptance, R&S had to extend its Builders Risk Insurance. Government was aware that R&S was carrying Builders Risk Insurance as R&S discussed recovery for Builders Risk Insurance costs with the Contracting Officer early on in the Project.

In a May 18, 2010, email from Government answering the pre-bid question, "will the owner be providing Builders Risk Insurance coverage?", Government stated, "[i]t is a business determination to be made on what type of insurance and amounts are required to protect the contractor until such time as the completed project is turned over to Government."[4] Subsequently, R&S included a line item for Builders Risk Insurance in its bid.  That bid was accepted by Government.

The insurance was prudent and necessary and benefitted Government. The additional compensation due R&S for extension of Builders Risk Insurance after November 23, 2011 is $242,740 as shown in PCO-8799[5]. This cost was not included in the First CDA Claim—and it is not part of the daily or additional General Conditions cost sought in the First CDA Claim or in this Second CDA Claim.

### c.   Extended General Conditions After June 26, 2013

The First CDA Claim only included General Conditions costs recorded through June 26, 2013. As previously-noted, June 26, 2013 is the date R&S believes Government should have accepted the Project. Instead, Government has continued to submit extra work requests and make illegitimate warranty and call back demands and failed to maintain equipment after taking possession of parts of the facility. Government's actions caused R&S to incur extended General Conditions from June 26, 2013 to August 31, 2013.

---

[3] As explained in the next section, further delay occurred after June 26, 2013, for which Government is responsible.
[4] See Vol II Exhibit No. PCO 8799.
[5] See Vol II Exhibit No. PCO-8799.

NOAA Southwest Fisheries Scie    Center Replacement
Headquarters and Laboratory Second Contract Disputes Act Claim                    October 30, 2013

In the First CDA Claim, R&S identified Government-caused problems through June 26, 2013. These problems ultimately delayed the work beyond June 26, 2013, and include:

- Government's late issuance of its Punchlist and Outstanding Items list
- Vibration testing of the tech tank which was not necessary due to R&S' workmanship but, instead, revealed design defects.[6]
- Late changes to work such as the 52 changes to the work authorized on April 23, 2013, through Government issued Contract Modification #015. Some of the changes which extended beyond June 26, 2013 included the following:
  - PCO 8680 – Domestic Water Heater Controls
  - PCO 8745 - Add Ball Valve for N Courtyard Landscaping
  - PCO 8747 - Warranty Repairs due to Lack of Maintenance on the Mechanical Systems
  - PCO 8756 – Generator ATS Points
  - PCO 8758 - Add Ball Valve and Vent for Each Tank in the Aquaria
  - PCO 8761 – Add 3 BTU Meters as part of the BAS Points
  - PCO 8763 - Liebert Troubleshooting and Service Requests for CRAC Units
  - PCO 8768 - Replacing Damaged Boiler Controls and Added Surge Protection
  - PCO 8797 – Tech Tank Waterproofing Consultant[7]

These Government-caused delays and additional work necessitated continued Project management, including attendance at weekly meetings, monitoring all work being performed, responding to Government requests, follow-up when Government failed to respond, performing change order management, and supervising and coordinating its subcontractors.

As described in PCO-8767[8], R&S is submitting this claim in the amount $224,957 for costs associated with extended management and supervision for the period between June 26, 2013 and August 31, 2013.[9] Similar to the First CDA Claim, these costs consist of labor for field and staff engineers and management, along with costs of each one of those employees: pickup trucks, fuel, cell phones, and expenses. As before, the additional management staff costs were calculated by multiplying the additional hours by the employees' labor rates, and adding their expenses. The claim excludes the cost of general conditions for legitimate warranty work.

---

[6] For example, on July 17, 2013, R&S provided Government with its response to Government's April 16, 2013 comments on the findings in its Acoustical Test report.

[7] On June 27, 2013, R&S completed repair at one additional seepage location, discovered in the control joint at the Tech Tank.

[8] See Exhibit PCO-8767 - Extended General Conditions

[9] Included in these costs are minor amounts of car allowance and per diem costs, which were incurred prior to June 26, 2013, but not transferred to the job cost until after June 26, 2013 and not included in the First CDA Claim. For the reasons stated in the First CDA Claim, these costs are additional and are properly included in this Second CDA Claim.

NOAA Southwest Fisheries Sci    Center Replacement
Headquarters and Laboratory Second Contract Disputes Act Claim

October 30, 2013

## IV.    Conclusion

R&S incurred costs associated with Government-caused delay, disruption, and changes that impacted the time and cost of Contract performance. This Second CDA Claim seeks the following additional costs, incurred due to Government misadministration and malfeasance:

| Description | Amount |
|---|---|
| Further Unresolved Extra Work | $909,327 |
| Wrongfully Withheld Unsatisfactory Progress Retention (PCO No. 8801) | $43,837 |
| Liquidated Damages (PCO No. 8795) | $1,180,000 |
| Builders Risk Insurance (PCO No. 8799) | $242,740 |
| Extended General Conditions After June 26, 2013 (PCO No. 8767) | $224,957 |
| Total | $2,600,861 |

R&S hereby reserves all rights and remedies to submit and to recover from Government the cost associated with this claim in the amount of $2,600,861. R&S also reserves its right to seek interest on the claim(s) as allowed by law.

NOAA Southwest Fisheries Sci   e Center Replacement
Headquarters and Laboratory Second Contract Disputes Act Claim                    October 30, 2013

## Appendix A. CDA Claim Master Exhibit List

| Volume No. | Section No. | Description | Exhibit No. |
|---|---|---|---|
| **REQUESTS FOR CONTRACT MODIFICATION (RCM EXHIBITS)** | | | |
| | **RCM - Pending PCO's** | | **PPCO** |
| Vol. 1 | Sec. I | PCO-8452 Add 60 x 36 Modulating Damper at AHU-5 | PPCO-8452 |
| Vol. 1 | Sec. I | PCO-8626 Add Email Alarms for Tech Tank Systems through BMS | PPCO-8626 |
| Vol. 1 | Sec. I | PCO-8701 Additional Landscaping Maintenance Costs Waiting for RFI 1481 Response | PPCO-8701 |
| Vol. 1 | Sec. I | PCO-8714 Replace Damaged Hepa Filter | PPCO-8714 |
| Vol. 1 | Sec. I | PCO-8732 Revise Seawater Piping at Building Entrance | PPCO-8732 |
| Vol. 1 | Sec. I | PCO-8743 Replace Existing Faucet Hand Controls with Foot Controls in the Necropsy Room | PPCO-8743 |
| Vol. 1 | Sec. I | PCO-8745 Add Ball Valve for N Courtyard Landscaping | PPCO-8745 |
| Vol. 1 | Sec. I | PCO-8747 Warranty Repairs due to Lack of Maintenance on the Mechanical Systems | PPCO-8747 |
| Vol. 1 | Sec. I | PCO-8749 Additional Building Cleaning Requested by NOAA | PPCO-8749 |
| Vol. 1 | Sec. I | PCO-8751 Maintenance of SP-1 | PPCO-8751 |
| Vol. 1 | Sec. I | PCO-8758 Add Ball Valve and Vent for Each Tank in the Aquaria | PPCO-8758 |
| Vol. 1 | Sec. I | PCO-8759 Recalibrate Flodar | PPCO-8759 |
| Vol. 2 | Sec. I | PCO-8762 PCS Disruption and Delay Impacts | PPCO-8762 |
| Vol. 2 | Sec. I | PCO-8763 Liebert Troubleshooting and Service Requests for CRAC Units | PPCO-8763 |
| Vol. 2 | Sec. I | PCO-8765 Extended Green Roof Maintenance while Waiting for RFI 1553 Response | PPCO-8765 |
| Vol. 2 | Sec. I | PCO-8766 JFM Additional Drywall and Framing Repairs due to Design Issues | PPCO-8766 |
| Vol. 2 | Sec. I | PCO-8768 Replacing Damaged Boiler Controls and Added Surge Protection | PPCO-8768 |
| Vol. 2 | Sec. I | PCO-8770 Misc. Reinforcing Steel Changes | PPCO-8770 |
| Vol. 2 | Sec. I | PCO-8771 Additional Cost Associated with Structural Reinforcing Changes | PPCO-8771 |
| Vol. 2 | Sec. I | PCO-8774 Electrical Rough-Ins for Card Readers Later Deleted | PPCO-8774 |
| Vol. 2 | Sec. I | PCO-8776 Re-Coordination of the Ceiling Space Above the Necropsy Room | PPCO-8776 |
| Vol. 2 | Sec. I | PCO-8778 Replace Two 20amp Receptacles with Two 30amp Receptacles | PPCO-8778 |
| Vol. 3 | Sec. I | PCO-8783 Revised J-box Locations for FA Strobes and Copy Cam | PPCO-8783 |
| Vol. 3 | Sec. I | PCO-8785 Additional UPS System Training for SWFSC Staff | PPCO-8785 |
| Vol. 3 | Sec. I | PCO-8787 Extend Camera Circuit to New Location | PPCO-8787 |
| Vol. 3 | Sec. I | PCO-8790 Delay and Disruption Costs Attributed to Design Issues and the Length of Time Required to get Answers to RFI's | PPCO-8790 |

NOAA Southwest Fisheries Sci   : Center Replacement
Headquarters and Laboratory Second Contract Disputes Act Claim

October 30, 2013

| Volume No. | Section No. | Description | Exhibit No. |
|---|---|---|---|
|  | **RCM - Rejected PCO's** |  | **RPCO** |
| Vol. 3 | Sec. I | PCO-8004 Tech Tank Delta Truss Connection | RPCO-8004 |
| Vol. 3 | Sec. I | PCO-8089 Added Reinforcing and Block-Outs @ Beam and Slab Connections to Perimeter Architectural Walls | RPCO-8089 |
| Vol. 3 | Sec. I | PCO-8144 Hard Wired Duress Buttons in Offices | RPCO-8144 |
| Vol. 3 | Sec. I | PCO-8476 Increased Feeder & Breaker Size for Larger Pumps Required to Meet Performance Standards | RPCO-8476 |
| Vol. 3 | Sec. I | PCO-8739 Hydro-Seed North Slope of Site | RPCO-8739 |
| Vol. 3 | Sec. I | PCO-8750 Unsuitable Green Roof Plant Replacement | RPCO-8750 |
| Vol. 3 | Sec. I | PCO-8755 Roller Shades at Rooms 378, 379, 380, 381, and 382 | RPCO-8755 |
|  | **RCM - Not Previously Submitted PCO's** |  | **NPCO** |
| Vol. 4 | Sec. I | PCO-8738 Rework at Door Headers for Mag Lock Installation | NPCO-8738 |
| Vol. 4 | Sec. I | PCO-8767 General Conditions Impacts due to Phased Possession of the Facility | NPCO-8767 |
| Vol. 4 | Sec. I | PCO-8772 BOGE Compressor and Controller Repair | NPCO-8772 |
| Vol. 4 | Sec. I | PCO-8773 Tech Tank Maintenance Required due to Phased Possession of the Facility | NPCO-8773 |
| Vol. 4 | Sec. I | PCO-8777 Additional Labor to Assist NOAA with the Filling and Draining Process of the Tech Tank | NPCO-8777 |
| Vol. 4 | Sec. I | PCO-8791 Bond Removed from Approved PCO's | NPCO-8791 |
| Vol. 4 | Sec. I | PCO-8792 Additional Costs Incurred by Paramount Fire in the Performance of their Scope of Work | NPCO-8792 |
| Vol. 4 | Sec. I | PCO-8793 Otis Elevator Costs Removed from Certified Claim due to Lack of Agreement to Amount of Claim | NPCO-8793 |
| Vol. 4 | Sec. I | PCO-8796 Acoustic Vibration Study | NPCO-8796 |
| Vol. 4 | Sec. I | PCO-8797 Tech Tank Waterproofing Consultant | NPCO-8797 |
| Vol. 4 | Sec. I | PCO-8798 Additional Door Hardware Pursuant to RFCP 212 | NPCO-8798 |
| Vol. 4 | Sec. I | PCO-8800 Certified Air | NPCO-8800 |
|  | | **GENERAL EXHIBITS** | |
| Vol. 4 | Sec. II.c | PCO-8767 Extended General Conditions | PCO-8767 |
| Vol. 4 | Sec. II.a | PCO -8801 Wrongfully Withheld Unsatisfactory Progress Retention | PCO-8801 |
| Vol. 4 | Sec. II.a | PCO-8795 Liquidated Damages | PCO-8795 |
| Vol. 4 | Sec. II.b | PCO-8799 Extended Builders Risk Insurance | PCO-8799 |

# Exhibit C

**From:** Linda Gruber Case 1:14-cv-00014-FMA Document 1 .gov Filed 01/06/14   Page 87 of 90
**Sent:** Monday, November 04, 2013 1:0.    1
**To:** Martin Sisemore; Mike Samudio
**Cc:** Marvin Frazier - NOAA Federal
**Subject:** Receipt of Claim #2 for Contract AB1330-10-CN-0114 La Jolla Construction

Good afternoon gentlemen,

This is to acknowledge receipt of Claim #2 for $2.6million, 4 of 4 binders, submitted 10/31/2013 and received by this office on 11/4/2013.

If at all possible, I would greatly appreciate if you could submit any part or all of the claim electronically (at least the narrative perhaps?).  As you know this greatly facilitates our ability to speedily address your request.

Thank you, have a great day,


Linda Gruber
Contract Specialist
Western Acquisition Division
U.S. Department of Commerce/NOAA
7600 Sand Point Way NE  WC, Bldg 1
Seattle, WA  98115-6349
Office (206) 526-6386

1

Fax (206) 527-0209

*Working Acquisition to Deliver your Mission!*

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

**From:** Linda Gruber - NOAA Federal [mailto:linda.m.gruber@noaa.gov]
**Sent:** Monday, November 04, 2013 1:0  M
**To:** Martin Sisemore; Mike Samudio
**Cc:** Marvin Frazier - NOAA Federal
**Subject:** Receipt of Claim #2 for Contract AB1330-10-CN-0114 La Jolla Construction

Good afternoon gentlemen,

This is to acknowledge receipt of Claim #2 for $2.6million, 4 of 4 binders, submitted 10/31/2013 and received by this office on 11/4/2013.

If at all possible, I would greatly appreciate if you could submit any part or all of the claim electronically (at least the narrative perhaps?). As you know this greatly facilitates our ability to speedily address your request.

Thank you, have a great day,


Linda Gruber
Contract Specialist
Western Acquisition Division
U.S. Department of Commerce/NOAA
7600 Sand Point Way NE  WC, Bldg 1
Seattle, WA  98115-6349
Office (206) 526-6386

1

Fax (206) 527-0209

*Working Acquisition to Deliver your Mission!*

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.